**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gerald CAPERELL,
Defendant–Appellant.**

No. 90–10073.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 10, 1990.

Decided July 10, 1991.

**976**

Bernard G. Little, Asst. U.S. Atty., Las Vegas, Nev., for plaintiff-appellee.

Martin R. Boyers, Las Vegas, Nev., for defendant-appellant.

Before SNEED, SCHROEDER and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Gerald Caperell appeals his conviction and sentence for engaging in a continuing criminal enterprise in violation of 21 U.S.C. §§ 848(b)(1) and (b)(2)(A). Caperell presents three arguments on appeal: (1) the indictment failed to state an offense; (2) the government breached the plea agreement; and (3) the sentencing court violated Caperell's due process rights. We reject these challenges and affirm.

## BACKGROUND

Caperell was charged in sixteen counts of a nineteen count superseding indictment.

The charges related to Caperell's involvement in the manufacture, distribution and possession of methamphetamine. Pursuant to negotiations, Caperell entered a guilty plea to Count 2 of the indictment. Count 2 originally charged Caperell with engaging in a continuing criminal enterprise during the period from May 1, 1987, to January 25, 1989. According to the terms of the plea agreement, the government amended Count 2 to shorten the duration of the charged criminal enterprise. By the amendment, the criminal enterprise terminated on November 17, 1988.

As part of the plea agreement, the government also agreed that it would "not make a recommendation as to a specific sentence defendant Caperell should receive." Both parties preserved their freedom to assert their positions on the applicable sentencing guideline range. The plea agreement states:

> Each party is entitled to contest or defend the evaluation by the United States Probation of each and every sentencing guideline factor (e.g., base offense level, acceptance of responsibility, obstruction of justice, criminal history category ...).

The government also agreed to dismiss the remaining charges against Caperell.

Caperell's sentencing took place on January 12, 1990, and January 16, 1990. Adopting the recommendation of the United States Probation Office, the sentencing court found that the appropriate guideline range was 188 to 235 months.[1] During the sentencing, the court indicated that the Probation Office did not recommend an increase in the base offense level based on the amount of drugs seized in the conspiracy. Under Sentencing Guideline 1B1.3, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or

---

**1.** The court determined that Caperell's base offense level was 36. The court then raised the offense level two points for obstruction of justice and deducted two points for acceptance of responsibility.

We do not address the government's claim that the trial court erred by reducing Caperell's base offense level for acceptance of responsibility. The government's argument, raised for the first time in its reply brief, is untimely. Fed.R.App.P. § 4(b).

part of a common scheme or plan as the count of conviction.

The prosecutor objected to the Probation Department's conclusion, pointing to Caperell's involvement in a January 1989 scheme to manufacture and distribute additional quantities of methamphetamine. Caperell was charged with involvement in this scheme in Count 16 of the Superseding indictment. Count 16 alleged that between January 2, 1989, and January 25, 1989, while incarcerated after his December 3, 1988, arrest, Caperell attempted to organize his codefendants, including his son, for the purpose of manufacturing 25 pounds of methamphetamine. Caperell's son admitted involvement in the conspiracy and stated that the purpose of the methamphetamine manufacture was to raise money for his father's bail. Referring to this scheme, the prosecutor argued that the additional 25 pounds of methamphetamine provided a basis for upward departure. The prosecutor also urged the court to increase Caperell's sentence on other grounds.

The court made detailed findings regarding various factors militating toward a high sentence, but did not comment on the prosecutor's argument regarding the January conspiracy. The court observed that many of these factors would justify an upward departure, but that he was employing them only to justify sentencing at the high end of the guideline range. The court then sentenced Caperell to 235 months imprisonment, the top of the guideline range.

## ANALYSIS

On appeal, Caperell contends that the district court lacked subject matter jurisdiction over the prosecution because the indictment failed to state a claim. Additionally, Caperell challenges his sentence on the grounds that (1) the government breached the plea agreement by urging the district court to depart upward because of the January conspiracy and (2) the sentencing court violated his due process rights by considering false and unreliable information in the presentence report or by failing to make specific findings of fact. We address each claim in turn.

### 1. Failure to State a Claim

Caperell argues that the indictment failed to state an offense because methamphetamine is unlawfully included on the schedules of controlled substances. Because Caperell raises this argument for the first time on appeal, we must determine whether we properly may review his claim. We conclude that we may.

■■■ We reject the government's argument that Caperell waived this defense by pleading guilty. Although a guilty plea generally waives all claims of constitutional violation occurring before the plea, "jurisdictional" claims are an exception to this rule. See *United States v. Montilla*, 870 F.2d 549 (9th Cir.1989), *amended* at 907 F.2d 115 (9th Cir.1990). In *Montilla*, we stated that, although the dividing line between constitutional claims waived by a plea of guilty and those that survive the plea is not always clear, "[c]laims that 'the applicable statute is unconstitutional or that the indictment fails to state an offense' are jurisdictional claims not waived by the guilty plea." *Id.* at 552 (quoting *United States v. Broncheau*, 597 F.2d 1260, 1261 n. 1 (9th Cir.), *cert. denied*, 444 U.S. 859, 100 S.Ct. 123, 62 L.Ed.2d 80 (1979)). Other circuits that have addressed this question have reached the same conclusion. See *United States v. Rivera*, 879 F.2d 1247, 1251 (5th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 554, 107 L.Ed.2d 550 (1989); *O'Leary v. United States*, 856 F.2d 1142, 1143 (8th Cir.1988) (per curiam); *United States v. Di Fonzo*, 603 F.2d 1260, 1263 (7th Cir.1979), *cert. denied*, 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980).

The government relies on *United States v. Mathews*, 833 F.2d 161 (9th Cir.1987), to support its argument. *Mathews*, however, is not inconsistent with our conclusion. In *Mathews*, the defendant challenged the factual basis giving rise to the court's jurisdiction. As we explained in *Montilla*, whether a claim is "jurisdictional," and therefore appealable, depends on whether the claim can be resolved by examining the face of the indictment or the record at the time of the plea without requiring further proceed-

ings. *Montilla*, 870 F.2d at 552. In *Mathews*, the resolution of the defendant's claim would have required an evidentiary hearing to determine whether the alleged facts occurred as admitted in the plea agreement. Since Mathews pleaded guilty, the court concluded that he had conceded those facts. *Mathews*, 833 F.2d at 163–64. In contrast, Caperell does not dispute the factual basis of his plea. Caperell's claim may be resolved by examining the indictment and the relevant statute. Accordingly, we conclude that appellate review of Caperell's challenge is proper. We proceed to the merits of that claim.

■ Caperell argues that the indictment failed to state a claim because the substance methamphetamine is unlawfully included as a schedule II non-narcotic controlled substance. Caperell reasons that the Attorney General was required to remove methamphetamine from the schedules of controlled substances under 21 U.S.C. § 811(g)(1), because the Federal Drug Administration (FDA) approved the product Rynal, which contains methamphetamine, for sale over the counter without a prescription. We disagree.

Rynal contains methamphetamine with a potency of .11 grams per 50 milliliters. We do not construe section 811 or its legislative history as evincing an intent of Congress that the Attorney General exclude all forms of methamphetamine from the criminal schedules of controlled substances simply because certain inert or nonabusive substances containing methamphetamine have been approved by the FDA for sale over the counter. Section 811(g)(1) provides:

> The Attorney General shall by regulation exclude any non-narcotic substance from a schedule if such substance may, under the Federal Food, Drug, and Cosmetic Act, be lawfully sold over the counter without a prescription.

21 U.S.C. § 811(g)(1) (1988) (emphasis added).

Clearly, under section 811, the Attorney General's duty to exempt a substance from the schedules is triggered by the FDA's approval of *that substance* for sale over the counter without a prescription. This explicit statutory condition has not been satisfied in the present case. As might be expected, Caperell has not shown that the FDA has approved over-the-counter sale methamphetamine as such.

The legislative history confirms our reading of this provision. In discussing the 1984 amendments to section 811, the Senate reported:

> Under current 21 U.S.C. § 811(g)(1), the Attorney General may exempt from a schedule of control certain compounds, mixtures, or preparations containing stimulant or depressant substances. Section 507 of the bill amends this provision of current law to clarify and expand the exemption authority of the Attorney General. The compounds, mixtures, and preparations which may be excluded are those that do not present any significant potential for abuse because of the nature of their preparation.

*S.Rep. No. 225, 98th Cong., 2d Sess. 265, 1984 U.S.Code Cong. & Admin.News 3182, 3447.*[2] Unlike the nearly pure methamphetamine manufactured by Caperell, the Attorney General has determined that the substance Rynal does not present a significant potential for abuse.

We reject Caperell's assertion that he is not required to seek FDA approval or comply with the detailed application procedures

**2.** To enable persons lawfully to manufacture and distribute these useful drugs, detailed application procedures were created and are set forth in the Code of Federal Regulations. A manufacturer must submit an application to the Administration which includes the name of the substance to be exempted and its complete quantitative composition. 21 C.F.R. § 1308.1(a) and (b). After receiving the application, the administrator may exempt the product from the schedules if it: (1) is combined with "one or more adulterating or denaturing agents in such a manner, combination, quantity, proportion, or concentration, that the preparation or mixture does not present any potential for abuse"; and (2) is formulated in such a way that the narcotic substance cannot be removed. 21 C.F.R. § 1308.23(a) and (a)(1). The application process assumes that the substance has already been approved by the FDA for lawful sale over the counter without a prescription.

for exemption from the schedules because the manufacturers of Rynal have already undergone the necessary evaluation and received approval. This argument ignores the clear statutory language and the legislative intent.

We are aware of only one decision addressing this issue, and we agree with that court's holding. In *United States v. Housley*, 751 F.Supp. 1446 (D.Nev.1990), the district court concluded:

> [M]ethamphetamine is only one ingredient of the substances in question. It is ludicrous to believe that authorization for sale over the counter of a product containing a small amount of a controlled substance renders that controlled substance lawful and exempt from the schedule in all forms.

*Id.* at 1447.

■ We also reject Caperell's argument that his sixth amendment right to be informed of the nature and the cause of the accusation against him was violated because the indictment did not allege that he was required to comply with the application procedures provided in 21 C.F.R. § 1308.21. An indictment must set forth the elements of the offense charged and contain a statement of the facts and circumstances sufficient to inform the defendant of the elements of the specific offense. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *LaMere v. Risley*, 827 F.2d 622, 624 (9th Cir.1987). Because non-compliance with 21 C.F.R. § 1308.21 is not an element of the offense of engaging in a continuing criminal enterprise, *see* 21 U.S.C. § 848 (1988), it need not have been alleged in the indictment.

### 2. Breach of Plea Agreement

■ Caperell asserts that the government breached the plea agreement by arguing for an increase in his sentence based on the January 1989 conspiracy because the government stipulated in the plea bargain that the continuing criminal enterprise terminated on November 17, 1988. Caperell contends that, by virtue of the stipulation, the January incident constituted uncharged conduct that was not part of the same course of conduct or common scheme or plan as the offense of conviction. Consequently, the district court could not consider that incident in determining Caperell's sentence. Sentencing Guidelines § 1B1.3. According to Caperell, the district court abused its discretion in entertaining the government's argument because it had approved the plea agreement and stipulation.

Caperell did not object to the government's argument at the sentencing hearing. This court has not yet determined whether a defendant waives his right to review in these circumstances.[3] Because we conclude that the government did not breach the plea agreement, we leave the resolution of this question for another case.

The plea agreement did state that count 2 would be amended to charge a period from May 1, 1987 to November 17, 1988. It did not say that the government would or would not argue that other acts were part of the same course of criminal conduct. The agreement contained other relevant provisions, however. It recited that the defendant and the government could not agree on the applicable guideline range, and that "each party is entitled to contest or defend the evaluation by United States Probation of each and every sentencing guideline factor." Even more to the point, the agreement stated that "[n]o one is in a position to predict: ... If the court will depart, either upward or downward, from the applicable sentencing guideline range," and that "[e]ach party shall place before the Court all facts it deems relevant to the Court's determination of disputed guideline factors as well as facts it deems relevant to the issue of departure." Certainly the government's urging of an upward depar-

---

**3.** The circuit courts are split on this issue. *Compare United States v. Hand*, 913 F.2d 854, 856 n. 2 (10th Cir.1990) (no waiver based on failure to object to plea agreement breach); *United States v. Moscahlaidis*, 868 F.2d 1357, 1360 (3rd Cir.1989) (same) *and Paradiso v. United States*, 689 F.2d 28, 30 (2d Cir.1982), *cert. denied*, 459 U.S. 1116, 103 S.Ct. 752, 74 L.Ed.2d 970 (1983) (same) *with United States v. Benson*, 836 F.2d 1133, 1135 (8th Cir.1988) (reviewing for plain error where issue not preserved for appeal).

ture based on the amount of drugs involved in Caperell's post-arrest activity was consistent with these provisions. Moreover, after Caperell had reviewed the presentence report, he and the government signed a joint sentencing statement that listed the following among the issues of fact to be tried and determined at sentencing: "Basis for upward departure.... (f.) Post arrest continuation of illegal activity (g.) Scope of illegal CCE." These provisions in the plea agreement and the joint sentencing statement totally refute Caperell's contention that the government violated its plea agreement in arguing as it did for an upward departure.

### 3. Due Process Violations

Caperell next argues that because the district court did not make factual findings regarding the January conspiracy to manufacture methamphetamine, it is unclear whether the evidence in the record is sufficient to show that (1) the twenty-five pounds of methamphetamine existed or (2) the incident was part of the same criminal scheme or plan as the count of conviction. Caperell further asserts that the district court violated his right to due process by considering unreliable factual information contained in the presentence report. Caperell contends that the presentence report set out two different quantities of drugs involved in the conspiracy and is therefore unreliable or false.[4]

Caperell did not raise these arguments before the district court or object to the allegedly unreliable factual information contained in the presentence report or to the prosecution's arguments based on that information. He therefore cannot rely on Fed.R.Crim.P. 32(c)(3)(D), which requires the sentencing court to make factual findings concerning disputed statements in the presentence report, or to make clear on the

record that the disputed facts were not taken into account in the sentencing. *See United States v. Baron,* 860 F.2d 911, 920 (9th Cir.1988), *cert. denied,* 490 U.S. 1040, 109 S.Ct. 1944, 104 L.Ed.2d 414 (1989) (case remanded for resentencing where court's findings were ambiguous and prosecutor was permitted to argue the challenged facts at length). Nonetheless, Caperell requests this court to review the proceedings for plain error and to extend plain error review to all cases in which the sentencing guidelines range exceeds 24 months.[5]

■ It is an open question in this circuit whether a defendant's failure to file written objections to the presentence report or to object to the district court's factual findings waives appellate review even for plain error. *See United States v. Sanchez,* 908 F.2d 1443, 1447 (9th Cir.1990). We need not resolve this issue, however, because we have concluded that none of the actions of the district court rise to the level of plain error. Plain error is a highly prejudicial error affecting substantial rights. *United States v. Hernandez,* 876 F.2d 774, 777 (9th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989).

■ To challenge at this stage the information used in sentencing, Caperell must show that the information is (1) false and unreliable and (2) demonstrably made the basis for the sentence. *United States v. Columbus,* 881 F.2d 785, 787 (9th Cir.1989). Caperell is unable to meet this burden.

Caperell concedes that the amount of drugs involved in the January conspiracy would not affect the court's calculation of his base offense level. Nonetheless, he contends that the district court may have relied on the inaccurate information in imposing the maximum sentence within the guideline range. To satisfy the second prong of the test set out in *Columbus,*

---

4. In paragraph 21, the presentence report states that 10,875.35 grams of methamphetamine were seized during the course of the conspiracy. Paragraph 28 states that the total net weight of all drugs seized in the offense exceeds 20,856.6 grams.

5. Caperell points to *United States v. Carvajal,* 905 F.2d 1292 (9th Cir.1990) in support of his

argument that this circuit reviews factual errors at sentencing for plain error. *Carvajal* is inapposite. In *Carvajal,* we reviewed a *legal* issue: whether the district court had improperly relied on evidence not in the record in determining that the defendant acted as a leader and organizer of a cocaine transaction. Here, Caperell challenges the court's factual findings.

however, Caperell must show that the court *did* rely on the challenged information in imposing his sentence. In his brief and at oral argument, Caperell could say only that the district court "might" have relied on the information in question. As he concedes, there is no evidence that the court relied on the presentence report to determine the total weight of drugs involved in the offense. Nor is there evidence in the record that suggests the court even considered the prosecutor's argument. Because Caperell cannot show that the challenged information was demonstrably made the basis of his sentence, we reject his claims. *See United States v. Avila,* 905 F.2d 295, 299 (9th Cir.1990).

Accordingly, Caperell's conviction and sentence are AFFIRMED.