UNITED STATES of America,
Plaintiff–Appellee,

v.

Carlo Alberto VENTRE, Defendant–
Appellant.

No. 01–50616.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 12, 2003.

Filed Aug. 11, 2003.

Jerry Sies of Los Angeles, California, for the defendant-appellant.

Miriam A. Krinsky and Elaine Lu of Los Angeles, California, for the plaintiff-appellee.

Before B. FLETCHER, HAWKINS, Circuit Judges, and BURY, District Judge.*

## OPINION

BETTY B. FLETCHER, Circuit Judge:

This action arises out of a custody dispute between Toni Dykstra ("Dykstra"), a United States citizen, and Carlo Ventre ("Ventre"), an Italian citizen, over their daughter after their relationship ended. When Ventre took the child to Italy in contravention of a stipulated custody order, Dykstra successfully petitioned for the child's return to the United States under the Convention on the Civil Aspects of International Child Abduction, *adopted* Oct. 25, 1980, T.I.A.S. No. 11670 ("Hague Convention"). After the child and Ventre returned to the United States, a federal grand jury indicted him on one count of kidnapping in violation of the International Parental Kidnapping Crime Act of 1993, 18 U.S.C. § 1204, ("IPKCA"). Ventre pled guilty to the charge pursuant to a plea agreement that contained a limited waiver of appeal. Ventre appeals contending that the district court lacked jurisdiction to accept the plea under the IPKCA. We have jurisdiction pursuant to 28 U.S.C. § 1291 to decide whether the return of the child

* The Honorable David C. Bury, U.S. District Judge for the District of Arizona, sitting by designation.

pursuant to civil proceedings under the Hague Convention forecloses criminal prosecution under the IPKCA. We agree with the district court and hold that prosecuting an individual under the IPKCA after a child is returned to the United States pursuant to Hague Convention proceedings "does not detract from the Hague Convention."

## BACKGROUND

### I. Factual Summary

In November 1995, Dykstra and Ventre had a daughter together. Approximately nine months later, Dykstra and Ventre separated. Shortly thereafter, a custody battle ensued. A California Superior Court judge entered a stipulated custody order granting joint legal custody of the child to both parents, but physical and primary custody to Ventre. Pursuant to the custody order, Ventre could not take the child out of Los Angeles County except for emergency and vacation purposes, and he was required to provide Dykstra with written notification at least three days prior to departure. Moreover, the custody order specifically prohibited the change of the child's residence to Italy.

On January 16, 1998, Ventre took the child to Italy without the consent of Dykstra. Ventre knowingly retained the child in Italy for the purpose of obstructing Dykstra's lawful exercise of her parental rights. Ventre did not provide Dykstra with an address or residential telephone number in Italy.

Dykstra filed an Order to Show Cause in California Superior Court in an attempt to regain custody of the child and to secure an order for the child's return. When Ventre failed to appear for the Order to Show Cause hearing, on March 27, 1998, a California Superior Court judge granted sole legal and physical custody of the child to Dykstra. Upon receiving sole custody of the child, Dykstra filed an application for assistance under the Hague Convention, to which both the United States and Italy are signatories.

Since Ventre put a former address on his Italian national identity card and used a non-existent address when he registered for cellular telephone service in Italy, the Italian police were not able to locate him until July of 1998. The Italian police finally located Ventre when he was involved in a public, unrelated verbal altercation with another individual.

Shortly thereafter, the Court of Minors in Rome convened to determine whether the child had been brought to Italy in violation of the Hague Convention. In July 1998, the Court of Minors of Rome found that the child "was brought to Italy by the father without the consent of the mother and without communicating the new address." Applying the Hague Convention, the Court of Minors ordered that the child be returned immediately to California.

Upon receiving a favorable decision from the Court of Minors, Dykstra, who had come to Italy, planned to depart immediately with the child. However, when Italian authorities attempted to procure the child from Ventre's residence, they discovered that she was ill and required hospitalization. Therefore, Dykstra's and the child's departure from Italy was delayed. On July 28, 1998, one day prior to their scheduled departure from Rome, Dykstra was found dead at the home of Ventre.[1] Upon the death of her mother, the child was placed in foster care in Italy, where

---

1. Ventre was arrested and spent two days in custody and then placed under "house arrest" by Italian authorities. He was subsequently released from house arrest. On December 19, 1999, Ventre returned to the United States. The death of Dykstra is still under investigation in Italy.

she remained for approximately fifteen months.

In May 1999, a warrant was issued by the Los Angeles Superior Court for Ventre's arrest on charges of international parental kidnapping. The Los Angeles Superior Court granted temporary legal and physical custody of the child to her maternal grandfather, Milton Dykstra. In August 1999, the Superior Court ordered that Milton Dykstra be substituted as the petitioner in the Hague Convention order for presentation to the court in Italy. In November 1999, the Court of Minors in Rome ordered that the child be returned to California with her grandfather, and shortly thereafter, she returned to California to live with her maternal grandparents. Subsequently, a California court granted joint custody to Ventre's brother and Milton Dykstra.

## II. Procedural Summary

In January 2000, a federal grand jury indicted Ventre on one count of kidnapping under subsection (a) of the IPKCA, 18 U.S.C. § 1204(a). Ventre moved to dismiss the indictment for lack of jurisdiction claiming that section (d) of the IPKCA prohibits application of subsection (a) in this case. The district court denied the motion. The court found that invoking and successfully using the Hague Convention to regain the child did not deprive it of jurisdiction to convict Ventre of kidnapping under the IPKCA. Pursuant to a plea agreement, Ventre withdrew his plea of not guilty to the single count charged in the indictment in exchange for a prison term of 364 days. Ventre appeals his conviction for lack of jurisdiction.

Ventre was sentenced to 364 days of imprisonment and one year of supervised release. Ventre completed his sentence on April 8, 2002. Ventre's supervision should have ended in April 2003. At present, Ventre is in INS custody pursuant to a detainer.[2]

## DISCUSSION

### I.

Although Ventre's supervised release should have ended, he claims that a conviction under the IPKCA will have collateral consequences on his immigration status, as well as his ability to regain custody of his daughter. The case or controversy provision in Article III, Section 2 of the United States Constitution requires that throughout a litigation, Ventre "must have suffered, or be threatened with, an actual injury traceable to the [United States] and [that injury is] likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). The Supreme Court has held that an appeal is not necessarily moot once a petitioner is released from custody because he may suffer other collateral consequences. *See Spencer v. Kemna*, 523 U.S. 1, 7–8, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998); *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). As the Supreme Court found in *Fiswick v. United States*, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (1946), Ventre's conviction may have immigration consequences. *Id.* at 222, 67 S.Ct. 224. In *Sibron*, the Supreme Court noted that "most criminal convictions do in fact entail adverse legal consequences," *id.* at 55, 88 S.Ct. 1889, and held that "a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged

---

**2.** At the time briefs were filed in this case, Ventre was in INS custody for abandonment

of his residency.

conviction," *id.* at 57, 88 S.Ct. 1889. Ventre challenges his underlying conviction, and it has not been shown that no consequences will be imposed as a result of his conviction. Therefore, Ventre has a live case or controversy that is likely to be redressed by a favorable judicial decision.

## II.

■ We have jurisdiction to determine whether we have jurisdiction. *Aragon–Ayon v. INS,* 206 F.3d 847, 849 (9th Cir.2000). The right to appeal is statutory and a waiver of this right is enforceable if made knowingly and voluntarily. *United States v. Bolinger,* 940 F.2d 478, 480 (9th Cir.1991). Whether a defendant has waived his statutory right to appeal by entering into a plea agreement and the waiver's validity are reviewed *de novo. United States v. Nguyen,* 235 F.3d 1179, 1182 (9th Cir.2000); *United States v. Littlejohn,* 224 F.3d 960, 964 (9th Cir.2000).

■ Despite the plea, if the district court lacked jurisdiction to convict, "the indictment would fail to state an offense against the United States and the district court would be deprived of jurisdiction." *United States v. Ruelas,* 106 F.3d 1416, 1418 (9th Cir.1996) (quoting *United States v. Mitchell,* 867 F.2d 1232, 1233 n. 2 (9th Cir.1989)). A claim is jurisdictional and therefore appealable if "the claim can be resolved by examining the face of the indictment or the record at the time of the plea without requiring further proceedings." *United States v. Caperell,* 938 F.2d 975, 977 (9th Cir.1991); *United States v. Montilla,* 870 F.2d 549, 552 (9th Cir.1989), *amended at* 907 F.2d 115 (9th Cir.1990). Ventre's claim may be resolved by examining the indictment and the relevant statute. *Caperell,* 938 F.2d at 978. Accordingly, appellate review is proper to determine whether the district court had jurisdiction. *Id.*

■ Although Ventre entered into a valid plea agreement waiving his right to appeal the conviction, "he could not by that waiver confer jurisdiction on the district court to receive the plea." *Ruelas,* 106 F.3d at 1418; *cf. Stock West, Inc. v. Confederated Tribes of Colville Reservation,* 873 F.2d 1221, 1228 (explaining that parties cannot waive the court's subject matter jurisdiction). Therefore, Ventre did not waive his jurisdictional challenge by waiving his statutory right to appeal. *Ruelas,* 106 F.3d at 1418.

Accordingly, we must address whether the district court had jurisdiction to accept Ventre's guilty plea under the IPKCA.

### A. International Parental Kidnapping Crime Act

Ventre contends that subsection (d) of the IPKCA prohibits a conviction under subsection (a) under the facts of this case. Ventre was convicted of subsection (a) of the IPKCA, which declares that "[w]hoever removes a child from the United States or retains a child (who has been in the United States) outside the United States with intent to obstruct the lawful exercise of parental rights shall be fined under this title or imprisoned not more than three years, or both." IPKCA, 18 U.S.C. § 1204(a). Ventre admits that he brought the child to Italy in an attempt to interfere with Dykstra's custody rights. However, Ventre argues that the district court lacked jurisdiction to convict him because the IPKCA's application is limited by subsection (d), which provides that "[t]his section does not detract from the Hague Convention on the Civil Aspects of International Parental Child Abduction, done at the Hague on October 25, 1980." More specifically, Ventre argues that the indictment cannot stand because he participated in Hague Convention proceedings in Italy,

and as such, federal proceedings would "detract from" the Hague Convention.

## B. Statutory Interpretation

 We review the construction, interpretation, or the applicability of a statute *de novo*. *United States v. Carranza,* 289 F.3d 634, 642 (9th Cir.2002); *United States v. Villa–Gonzalez,* 208 F.3d 1160, 1163 (9th Cir.2000). Under traditional principles of statutory interpretation, if a statute's plain meaning is clear, resort to legislative history is unnecessary. *See United States v. Gonzales,* 520 U.S. 1, 6, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997) ("Given the straightforward statutory command, there is no reason to resort to legislative history."). But where a statute yields to more than one reasonable interpretation, we turn to the statute's legislative history for evidence of congressional intent. *United States v. Daas,* 198 F.3d 1167, 1174 (9th Cir.1999).

### 1. Plain Meaning

The IPKCA *criminalizes* the removal of a child to another country with the intent to obstruct parental rights. The statute punishes individuals for taking a child from the United States to another country. On its face, the IPKCA specifically provides that "[the IPKCA] does not detract from the Hague Convention." 18 U.S.C. § 1204(d). Unlike the IPKCA, the Hague Convention is a *civil remedy* adopted to effect the return of children brought to other countries. The dual purposes of the Hague Convention are "to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and [ ] to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." Hague Convention, Art. 1.

 "Detract from" means "to diminish the importance, value, or praiseworthi-

ness of something." WEBSTER's THIRD NEW INT'L DICTIONARY 617 (1993). Ventre claims that applying the IPKCA to him will detract from the Hague Convention because it may limit the effectiveness of other countries' participation in the Hague Convention with the United States. For this proposition Ventre cited to the statement provided by a member of the Department of State, the implementing authority of the Hague Convention in the United States, at a Congressional committee hearing concerning this statute. In the hearing, Peter Pfund testified that some Hague participating countries' delegates expressed concern about putting an alleged abducting parent in jail if the child is returned to the United States. *Int'l Parental Child Abduction Act of 1989: Hearing on H.R. 3759 Before the Subcomm. on Criminal Justice of the House Comm. on the Judiciary,* 101st Cong. 38–39 (1990) (hereinafter "1990 Int'l Child Abduction Hearing") (statement of Peter Pfund, Ass't Legal Adviser, Dep't of State). He noted that some delegates feared that such an action may cause "a grave risk" in returning the child because returning the child "would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention, Art. 13; 1990 Int'l Child Abduction Hearing at 39. Such a risk is an exception to ordering the child returned to another Hague participating country under Article 13 of the Hague Convention.

The statute is not ambiguous. The statute specifically recognizes the Hague Convention and as such, should not be interpreted to undermine the Hague Convention. Moreover, there is no provision in the IPKCA deferring criminal charges against an individual who abducts a child to a Hague—participating country. Ventre's contention that applying the statute to him detracts from the Hague Convention because he already participated in

Hague Proceedings is without merit. A criminal conviction under the statute has no bearing on Hague proceedings preceding an individual's conviction under the IPKCA.

## 2. Legislative History

If there were any doubt as to whether the statute is ambiguous, the legislative history clarifies Congress' intent in enacting the IPKCA. Ventre argues that applying the statute to him detracts from the Hague Convention because the IPKCA was enacted to close the enforcement gap with those countries who had not signed the Hague Convention. This argument fails for several reasons provided in House Report No. 103–390 submitted with the IPKCA. *See* H. Rep. No. 103–390 (1993), *reprinted in* 1993 U.S.C.C.A.N. 2419–2424. The purpose of the IPKCA is to "deter the removal of children from the United States to foreign countries in order to obstruct parental rights." H. Rep. No. 103–390, at 1, *reprinted in* 1993 U.S.C.C.A.N. 2419. The House Report recognized that many countries are not signatories to the Hague Convention, "leaving individual countries to take whatever legal unilateral action they can to obtain the return of abducted children." H. Rep. No. 103–390, at 3, *reprinted in* 1993 U.S.C.C.A.N. 2421. The IPKCA was designed to accomplish four purposes: (1) to ease extradition of the abductor by making parental kidnapping a federal offense; (2) to serve as a deterrent; (3) to enhance international efforts when seeking the return of a child; and (4) to provide a clear message to other nations that the United States acknowledges the gravity of international parental kidnapping. *Id.* Most importantly, the House Report explains that "Section 1204(d) makes clear that nothing in this section is to be construed as detracting from the provisions of the Hague Convention." H. Rep. No. 103–390, at 5, *reprinted in* 1993 U.S.C.C.A.N. 2423. The provisions of the

Hague are to effect the return of the child. When interpreting the IPKCA, courts must take into account Hague Convention provisions, if applicable.

Several bills to address the problem of international parental kidnapping were introduced in Congress. One of them, S. 185, specifically included a provision prohibiting prosecution against individuals who remove a child to a Hague participating country. S.185, 101st Cong. § 1(g). This language, however, was not included in the final bill. Congress chose not to exclude the application of the IPKCA to individuals fleeing to Hague countries.

Ventre relies on the Second Circuit decision in *United States v. Amer*, 110 F.3d 873 (2nd Cir.1997), for the proposition that when the civil mechanism of the Hague Convention is available, criminal prosecution detracts from the Convention. The Second Circuit decision involved a conviction under the IPKCA of an individual who abducted his children to a non Hague participating country. The *Amer* court found that since civil remedies were not available, criminal remedies to effectuate the return of children did not "detract from" the Hague Convention because prosecution of individuals removing children to non-Hague participating countries "fulfills the 'enforcement-gap-closing' function for which the statute was *partially* enacted." *Amer*, 110 F.3d at 882 (emphasis added).

Ventre mischaracterizes the IPKCA as a replacement for the Hague Convention when trying to effect the return of a child from a non-participating country by punishing the wrong-doer. The IPKCA is not a replacement of the Hague Convention or an alternative to it, it is meant to complement the Hague Convention. The House Report and the President's statement in signing the legislation clarifies that proceedings under the Hague Convention should be the "first choice of a parent

whose child has been abducted." H. Rep. No. 103–390, at 5, *reprinted in* 1993 U.S.C.C.A.N. 2423; Statement by President of the United States upon Signing H.R. 3378, 29 Weekly Compilation of Presidential Documents 2493, Dec. 6, 1993, *reprinted in* 1993 U.S.C.C.A.N. 2424–1. That does not, however, preclude prosecution of the kidnapper. *See United States v. Cummings*, 281 F.3d 1046 (9th Cir.2002) (allowing a conviction under the IPKCA when a Hague participating country denied a petition for relief).[3]

In this case the child was returned pursuant to the civil remedies provided by the Hague Convention. We conclude that neither the Convention nor the IPKCA prohibits criminal prosecution of an individual once a child is returned pursuant to Hague proceedings. In fact, prosecution under the IPKCA furthers the goal of the IPKCA, to deter international kidnapping.

## CONCLUSION

Neither the plain meaning of the IPKCA nor the legislative history suggests that the district court did not have jurisdiction to accept Ventre's guilty plea. After a child has been returned to the United States pursuant to Hague Convention civil proceedings, a criminal conviction under the IPKCA does not detract from the Hague Convention. Ventre's conviction must be upheld.

**AFFIRMED.**

---

**3.** In *Cummings,* we upheld the constitutionality of the IPKCA and the conviction of an individual when a German court denied a petition made under the Hague Convention to return children to Washington. Cummings, the children's father, was convicted under the IPKCA for retaining his children outside of the United States contrary to the mother's parental rights.