**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Wesley Everett DOUGLAS,**
**Defendant–Appellant.**

**No. 91–10073.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 8, 1991.

Decided Aug. 17, 1992.

As Amended on Denial of Rehearing
Oct. 14, 1992.

Franny A. Forsman, Federal Public Defender, Las Vegas, Nev., for defendant-appellant.

Camille W. Chamberlain, Asst. U.S. Atty., Las Vegas, Nev., for plaintiff-appellee.

Before: FLETCHER, WIGGINS, and KOZINSKI, Circuit Judges.

WIGGINS, Circuit Judge:

## OVERVIEW

Defendant Wesley Douglas appeals his conviction under 18 U.S.C. § 922(g)(1) for being a convicted felon in possession of a firearm. Douglas argues that he cannot be convicted for possession of firearms under section 922(g)(1) because at the time of his arrest he was still allowed to possess firearms pursuant to 18 U.S.C. § 925(b). This court has jurisdiction over Douglas's timely appeal pursuant to 28 U.S.C. § 1291 (1988). We reverse Douglas's conviction.

## BACKGROUND

Defendant Wesley Douglas made his living dealing in guns pursuant to a valid federal firearms license. On October 25, 1989, Douglas pled guilty to felony charges based on possession of unregistered National Firearms Act weapons (e.g., machine guns). After his guilty plea, Bureau of Alcohol, Tobacco, and Firearms (BATF) agents told Douglas and his attorney that Douglas could continue to deal in firearms until the final adjudication pursuant to his prior indictment. Douglas was also advised that he and his girlfriend, Karen Gatherer, should get rid of their guns before his conviction became final. Sentencing and entry of judgment were scheduled for March 5, 1990.

On January 12, 1990, Douglas was selling guns from Gatherer's personal inventory at a gun show in Las Vegas. Because Douglas still held a valid federal firearms license at the time, such sales were legal as long as Douglas used a Nevada federal firearms licensee to make the transaction. The government suggests that Douglas was not making these transactions through a Nevada licensee. BATF agents arrested Douglas at the gun show.

On January 25, 1990, Douglas was indicted for being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). In pre-trial proceedings, Douglas filed a motion to dismiss and argued that, under 18 U.S.C. § 925(b), a licensed gun dealer who has been indicted for a felony may possess firearms and continue operations until the time of sentencing and entry of judgment. The government, however, argued that section 925(b) does not allow a gun dealer to possess firearms after entry of a guilty plea. The government convinced the district court to grant a motion in limine precluding Douglas from presenting his section 925(b) defense to the jury. The case was tried September 24 to 26, 1990. During the jury deliberations, the jury asked whether mere ownership or possession of the firearms at the gun show was enough to convict Douglas under section 922(g)(1): "[I]f a person pleads guilty to a crime—and is therefore a felone [sic]. If that person owned a gun or was in the presence of, or physically handled a gun imidiately [sic] after pleading guilty— would that person imidiately [sic] be guilty of possession of a firearm?" The jury returned a verdict of guilty for being a felon in possession of firearms.

## DISCUSSION

### A. The Section 925(b) "Winding Down" Exception

■ The issue before us is whether a person who has pled guilty to a felony and is winding down his gun dealing operations under a valid firearms license pursuant to 18 U.S.C. § 925(b) may be convicted for being a felon in possession of firearms under 18 U.S.C. § 922(g)(1). This is a question of law which we review de novo.[1] *See*

---

1. The government notes that an agency's interpretation of statutes it administers is entitled to

**1048**

*United States v. Shields*, 939 F.2d 780, 781 (9th Cir.1991) (questions of law reviewed de novo).

Douglas was indicted and convicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).

> It shall be unlawful for any person—(1) who has been convicted in any court of, [sic] a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C.S. § 922(g)(1) (Supp.1991). This conviction cannot stand because at the time Douglas was arrested he was still allowed to possess firearms under the exception for gun dealers winding down operations spelled out in 18 U.S.C. § 925(b). Section 925(b) provides:

> A licensed ... dealer, or licensed collector who is indicted for a crime punishable by imprisonment for a term exceeding one year, may, notwithstanding any other provision of this chapter, continue operation pursuant to his existing license ... during the term of such indictment and until any conviction pursuant to the indictment becomes final.

*Id.;* 27 C.F.R. § 178.143 (1991).

Douglas had entered a guilty plea to the prior indictment on October 25, 1989. However, entry of judgment and sentencing were scheduled for March 5, 1990. Douglas was arrested for selling guns at the gun show on January 12, 1990—well before the final adjudication pursuant to the prior indictment. The underlying questions are whether Douglas's conviction pursuant to the prior indictment had become final at the time he possessed the firearms at the gun show, and even if final, whether the BATF allows a further grace period for winding down. The issue of what is "finality" in this context has not been faced squarely by any court as far as we can tell. Nor does there seem to be a clear cut answer.[2] We need not decide the issue here.

The government does not dispute Douglas's allegations that, *after Douglas's*

deference. *See Saratoga Sav. & Loan Ass'n v. Federal Home Loan Bank Bd.*, 879 F.2d 689, 691 (9th Cir.1989) (citing *Chevron U.S.A. v. NRDC*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). However, the irony in this case is that the BATF's interpretation of the statute, as discussed below, supports rather than undermines Douglas's interpretation. Moreover, it is unclear whether an agency's interpretation .of a *criminal* statute is entitled to deference under *Chevron.*

**2.** Although we never reach the issue, Douglas argues quite persuasively that "[w]e should avoid an interpretation of a statute that renders any part of it superfluous and does not give effect to all of the words used by Congress." *Beisler v. Commissioner of Internal Revenue*, 814 F.2d 1304, 1307 (9th Cir.1987) (en banc). Douglas therefore argues that section 925(b) must be read to create a limited winding down period beyond the "conviction" that is used for purposes of section 922(g) because any other reading would render the phrases "notwithstanding any other provision of this chapter" and "becomes final" superfluous. Reading sections 922(g) and 925(b) together, the clear intent of Congress was to allow a licensed gun dealer a limited time after a felony conviction to liquidate his inventory; the gun dealer can continue operations until the conviction becomes final. Douglas argues that a conviction does not become final until entry of judgment and sentencing. *See* Fed.R.App.P. 4(b) (conviction is not final for purposes of appeal until entry of judgment); Fed.R.Crim.P. 32(d) (a guilty plea does not become final and may be withdrawn for any fair or just reason before sentence is imposed); *Teague v. Lane*, 489 U.S. 288, 314 n. 2, 109 S.Ct. 1060, 1077 n. 2, 103 L.Ed.2d 334 (1989) (O'Connor, J., joined by Rehnquist, C.J., Scalia, J., and Kennedy, J.) ("a criminal judgment necessarily includes the sentence imposed upon the defendant"); *Flynt v. Ohio*, 451 U.S. 619, 620, 101 S.Ct. 1958, 1959, 68 L.Ed.2d 489 (1981) ("Applied in the context of a criminal prosecution, finality is normally defined by the imposition of the sentence."); *Parr v. United States*, 351 U.S. 513, 518, 76 S.Ct. 912, 916, 100 L.Ed. 1377 (1956) ("Final judgment in a criminal case means sentence.") (quoting *Berman v. United States*, 302 U.S. 211, 212, 58 S.Ct. 164, 166, 82 L.Ed. 204 (1937)); *Miller v. Aderhold*, 288 U.S. 206, 210–11, 53 S.Ct. 325, 325–26, 77 L.Ed. 702 (1933); *United States v. Gottlieb*, 817 F.2d 475, 476 (8th Cir.1987) (orders regarding a guilty plea are not final decisions until after sentencing); *Aguilera–Enriquez v. INS*, 516 F.2d 565, 571 (6th Cir.1975) ("Once sentencing [on a guilty plea] is completed ... the conviction is final for deportation purposes."), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976).

*guilty plea,* BATF agents told Douglas and his attorney that Douglas could continue to deal in firearms until the final adjudication pursuant to his prior indictment. Indeed, an official BATF letter indicates that the BATF interprets section 925(b) to allow convicted felons an additional 30 days after their conviction becomes final to wind down their gun dealing operations. In addition, the BATF admitted at trial that Douglas's license to deal guns was still valid at the time of his arrest. Simply put, the government has conceded that section 925(b) "creates a limited winding down period during which licensed firearms dealers indicted and/or convicted on felony charges may continue to operate their businesses pursuant to their licenses" and that Douglas had a valid license under section 925(b). This ends the matter. Douglas should not have been indicted for possession during this grace period.

■ Because Douglas had a valid license and was entitled to possess and transfer firearms under section 925(b), his conviction must be reversed. It is unmistakably clear from the record in this case that Douglas was indicted and convicted for being a felon in possession of firearms under section 922(g)(1). As a matter of law, a gun dealer who is winding down his operations under section 925(b) pursuant to a valid license cannot be convicted of possession of firearms under section 922(g)(1). Therefore, we reverse Douglas's conviction under section 922(g)(1) and direct that the indictment be dismissed.

### B. The Indictment

■ The government tries to salvage this case by arguing that, although Douglas had the right to possess firearms under section 925(b), Douglas's conduct still violated section 922(g)(1) because it fell outside the legal parameters of his valid license. This argument is commendable for

its subtlety, but it is completely meritless. Although there may be evidence suggesting that Douglas violated the regulations applicable to licensed gun dealers, he was not indicted or convicted for these alleged violations. The indictment states only that the "defendant herein, having been convicted ... [of] a crime punishable by imprisonment for a term exceeding one (1) year, knowingly, willfully and unlawfully did possess nine (9) firearms that were transported in interstate commerce, to wit: [naming the specific .22 rifles, shotguns, and revolvers]." Douglas was indicted and convicted for being a felon in possession of firearms at the gun show under section 922(g)(1).

The government argues that Douglas was not conducting operations pursuant to section 925(b) because Douglas, a California licensee, violated the law by selling firearms at a Nevada gun show. Indeed, the government secured its motion in limine in part by representing to the district court that it was unlawful for a California licensee to conduct operations and sell guns at a Nevada gun show. However, the law is clear that a California licensee may conduct operations at a Nevada gun show. According to BATF guidance documents and testimony in this case, the California licensee may display and possess guns, negotiate price, and receive money for guns as long as the transfer of the firearm is through a Nevada licensee who fills out the appropriate forms. In this case, the California licensee simply had to transport the guns to the Nevada licensee to accomplish the official transfer.[3] *See* 27 C.F.R. § 178.29–.30 (1991) (a "licensed dealer" may transfer a firearm to a licensed dealer in another state); § 178.100 (in-state licensee may transfer guns to a nonlicensee at a gun show).

■ If the government had proof that Douglas violated the regulations governing

---

**3.** The Government's final argument appears to be that Douglas must transport the firearms to the Nevada licensee by first taking the firearms back to California and then mailing them to the Nevada licensee. Although the government argues that BATF policy requires such a maneuver, we can find no publication of such a rule in

the Code of Federal Regulations and Douglas cannot be convicted for violating uncodified BATF "policy." In any event, this argument again misses the point that Douglas was indicted and convicted for possession of firearms, not for violating regulations governing gun shows.

dealers at gun shows, the government should have indicted and tried Douglas on that basis. However, Douglas cannot be convicted for an offense that was not included in the indictment (or in the jury verdict for that matter). *United States v. Mastelotto*, 717 F.2d 1238, 1248 (9th Cir. 1983) (court cannot alter the crime charged by allowing conviction on different elements of the offense than those presented to the grand jury in the indictment). The government may be able to show that Douglas's conduct violated the law, but it cannot show that he violated section 922(g), the crime with which he was charged. Therefore, we reverse Douglas's conviction for being a felon in possession of firearms and dismiss the indictment charging the same.

## CONCLUSION

For the reasons set forth above, Douglas's conviction is reversed and the indictment is dismissed.