**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
         *Plaintiff-Appellant,*

v.

JOHN GILBERT OGLES,
         *Defendant-Appellee.*

No. 03-10439

D.C. No.
CR-02-01805-CKJ

UNITED STATES OF AMERICA,
         *Plaintiff-Appellee,*

v.

JOHN GILBERT OGLES,
         *Defendant-Appellant.*

No. 04-10069

D.C. No.
CR-02-01805-CKJ

OPINION

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted
October 4, 2004—San Francisco, California

Filed April 28, 2005

Before: Pamela Ann Rymer, Richard C. Tallman, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea;
Partial Concurrence and Partial Dissent by Judge Rymer

## COUNSEL

Paul K. Charlton, United States Attorney for the District of Arizona, Maria Davila, Assistant United States Attorney for the District of Arizona, and Michael A. Rotker, United States Department of Justice, Washington, D.C., for the government.

Richard E. Gardiner, Fairfax, Virginia, for defendant John Gilbert Ogles.

## OPINION

BEA, Circuit Judge:

John Gilbert Ogles appeals his conviction for willfully selling and transferring physical possession of a firearm in violation of 18 U.S.C. §§ 922(b)(3) and 924(a)(1)(D) (Count One), on grounds that the district court erred in denying both his

motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 and his motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. The government appeals the district court's order granting Ogles's motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 as to the charge of willfully engaging in the business of dealing firearms without a license in violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D) (Count Two). We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3731, and affirm Ogles's conviction under Count One but reverse the district court's judgment of acquittal as to Count Two and remand for proceedings consistent with this opinion.

## I.

At all relevant times, Ogles was a resident of California. He applied for and received a federal firearms license for a place of business in California. Ogles did not apply for nor did he receive a federal license to deal in firearms in Arizona. Nevertheless, on June 1, 2002, Ogles set up a booth at a gun show in Arizona and sold a firearm to Michael Buda, an Arizona resident.

On October 16, 2002, Ogles was indicted on two counts: "willfully . . . sell[ing] and deliver[ing] to Michael Buda a firearm . . . knowing and having reasonable cause to believe that Michael Buda at the time of the sale and delivery did not reside in the State in which the licensee's place of business was located" in violation of 18 U.S.C. §§ 922(b)(3) and 924(a)(1)(D) (Count One); and "willfully engag[ing] in the business of dealing in firearms without a license, that is outside the State in which the licensee's place of business was located," in violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D) (Count Two).

At Ogles's trial, the government introduced the following evidence regarding Ogles's actions at the Arizona gun show

in question. David Morse and Walter Puczkowsky, both licensed by the federal authorities for sales of firearms at places of business in Arizona, testified that on the morning of the gun show they informed Ogles that he could not physically transfer firearms to purchasers at the Arizona gun show. Buda testified that he purchased a firearm from Ogles and that Ogles handed over the gun to Buda after Buda showed Ogles his Arizona driver license. Buda also testified that he did not fill out any paperwork with Ogles after he purchased the firearm. Thomas Braxton testified that at the same Arizona gun show, an African-American man handed Ogles money and then walked away with a firearm he had picked up from one of the tables at Ogles's booth. Braxton also testified that he saw a man and his son hand Ogles money and then walk away with a firearm. Finally, Arthur Kramer testified that he purchased a firearm from Ogles.

Before trial, Ogles filed a motion *in limine* to exclude the testimony of Braxton and Kramer pursuant to Federal Rules of Evidence 404(b) and 403; the district court denied the motion. At the close of the government's case-in-chief, Ogles moved for a judgment of acquittal as to both counts. The district court reserved decision as to Count One but granted the motion as to Count Two. Ultimately, the jury convicted Ogles under Count One, after which the district court denied Ogles's earlier-filed motion for a judgment of acquittal as to Count One and Ogles's then-filed motion for a new trial. The district court sentenced Ogles to twenty-four months supervised probation, three months home confinement, and a $100 special assessment. Both Ogles and the government filed timely appeals.

## II.

Ogles appeals his conviction under Count One on four separate grounds. We address each in turn, and thereafter address the government's appeal of the district court's judgment of acquittal as to Count Two.

A.

1.

Ogles first challenges the district court's denial of his motion for judgment of acquittal as to Count One on the grounds that no rational trier of fact could have found that Ogles wilfully violated 18 U.S.C. § 922(b)(3). We review the district court's denial of Ogles's motion for a judgment of acquittal *de novo* and determine if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States* v. *Carranza*, 289 F.3d 634, 641-42 (9th Cir. 2002) (quoting *Jackson* v. *Virginia*, 443 U.S. 307, 319 (1979)). We affirm the district court's denial of Ogles's motion for a judgment of acquittal.

**[1]** Count One charged Ogles with willful violation of 18 U.S.C. § 922(b)(3), which provides in relevant part:

> It shall be unlawful for any . . . licensed dealer . . . to sell or deliver . . . any firearm to any person [other than a licensed importer, licensed manufacturer, licensed dealer or licensed collector] who the licensee knows or has reasonable cause to believe does not reside in . . . the State in which the licensee's place of business is located . . . .

18 U.S.C. § 922(b)(3); *see also* 18 U.S.C. § 924(a)(1)(D) (providing for a fine or imprisonment in the event of a willful violation of 18 U.S.C. § 922). We have previously interpreted 18 U.S.C. § 922(b)(3) to mean that a dealer licensed in one state, who attends a gun show in another state, "may display and possess guns, negotiate price, and receive money for guns *as long as the transfer of the firearm is through a . . . licensee [of the state in which the gun show is located] who fills out the appropriate forms*." *United States* v. *Douglas*, 974 F.2d 1046, 1049 (9th Cir. 1992) (emphasis added) (citing 27 C.F.R.

§§ 178.29-.30, 178.100 (1991)). "[W]illfully" as used in 18 U.S.C. § 924(a)(1)(D) requires that the defendant act with knowledge that his conduct is unlawful, but not that the defendant be aware of the specific provision that he or she is charged with violating. *Bryan* v. *United States*, 524 U.S. 184, 192, 198-99 (1998).

Viewing the evidence in the light most favorable to the government, a rational trier of fact could have found beyond a reasonable doubt that when Ogles transferred possession of the firearm to Buda, he did so with knowledge his conduct was unlawful. Morse and Puczkowsky, both licensed firearm dealers, testified that they had told Ogles on the morning of the gun show that because he was licensed out of state he would need to ship any firearms he sold at the gun show from his licensed premises to a dealer licensed in state, who could then physically transfer the firearms to the purchasers. Further, Buda's testimony indicates that Ogles knew Buda was an Arizona resident and that Ogles did not require Buda to fill out the paperwork necessary for a firearms transaction.[1]

**[2]** Ogles argues, however, that Morse's and Puczkowsky's statement of the law was inaccurate because *Douglas* holds only that an out-of-state licensed dealer must physically transfer firearms through dealers licensed in the sale-point state, not that an out-of-state licensed dealer must first ship those

---

[1]In affirming the district court's order denying Ogles's motion for judgment of acquittal, we need go no further than to hold that the warnings by Morse and Puczkowsky in combination with Buda's testimony were *sufficient* evidence on the basis of which a rational trier of fact could have found beyond a reasonable doubt that Ogles transferred possession of the firearm to Buda with knowledge that his conduct was unlawful. We neither hold nor mean to suggest that prior warnings such as those provided by Morse and Puczkowsky are *necessary* to prove that a defendant violated 18 U.S.C. § 922(b)(3) willfully. Rather, willfulness as used in 18 U.S.C. § 924(a)(1)(D) requires only that the defendant act with knowledge that his conduct is unlawful, not that the defendant necessarily be warned in the fashion as was Ogles. *See Bryan*, 524 U.S. at 191-96.

firearms from his or her licensed premises. Ogles also relies on testimony from an agent from the then United States Bureau of Alcohol, Tobacco and Firearms ("ATF") to the same effect. Even if we were to assume that Ogles's statement of the law is correct — something we do not decide here — Morse's and Puczkowsky's statements nevertheless put Ogles on notice that he could not directly transfer any firearms to Buda at the Arizona gun show. Thus, after viewing Morse's and Puczkowsky's testimony in the light most favorable to the government, it is clear that a rational trier of fact could have found beyond a reasonable doubt that Ogles knew he was acting in violation of the law when he physically transferred the firearm to Buda.

2.

Ogles next challenges his conviction under Count One on the grounds that the government failed to disclose impeachment evidence regarding prosecution witness Braxton and, thus, that the district court should have granted his motion for a new trial. Specifically, Ogles argues that the government should have disclosed that Braxton had been interviewed by the ATF and still had an application pending, which he expected to be considered in the following year — information that Braxton first made known to the Assistant United States Attorney prosecuting the case while the jury was in the midst of deliberations. We review *de novo* the district court's denial of a motion for a new trial based on alleged *Brady* violations. *United States* v. *Antonakeas*, 255 F.3d 714, 725 (9th Cir. 2001).

**[3]** To prevail on his *Brady* claim, Ogles must show that "(1) the evidence was exculpatory or impeaching; (2) it should have been, but was not produced; and (3) the suppressed evidence was material to his guilt or punishment." *Id*.; *see also United States* v. *Bagley*, 473 U.S. 667, 676 (1985). Evidence is material " 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result

of the proceeding would have been different.' " *Kyles* v. *Whitley*, 514 U.S. 419, 433-34 (1995) (emphasizing that "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence"); *Antonakeas*, 255 F.3d at 725. Even if we were to assume that Ogles can show that the undisclosed information about Braxton's pending application with the ATF was impeachment evidence that should have been but was not produced, granting a motion for a new trial on this basis would still not be appropriate because the evidence was not "material."

**[4]** Braxton testified that he had witnessed Ogles make what the government argued in its closing arguments were two unlawful firearm sales, which "show[ed] that when the defendant sold this firearm to Michael Buda, he was acting willfully." The government concedes in its briefs that this testimony "provided a powerful rebuttal to defendant's claim of mistake . . . ." Nevertheless, the nondisclosure of the impeachment evidence here does not "undermine confidence in the outcome," *Bagley*, 473 U.S. at 682, nor warrant a conclusion that Ogles received anything but a "fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434. Braxton's testimony was corroborated by Kramer. Further, even if the jury had discounted or even disregarded Braxton's testimony, Morse's and Puczkowsky's testimony regarding Ogles's awareness of the law prohibiting him from transferring firearms at the Arizona gun show in combination with Buda's testimony regarding the circumstances surrounding Ogles's transfer of a firearm to him was alone sufficient evidence to support Ogles's conviction under Count One. Consequently, nondisclosure of the information Ogles charges the government failed to divulge does not undermine confidence in the verdict.

3.

Ogles next argues that the district court erroneously admitted Braxton's and Kramer's testimony concerning Ogles's alleged sales of firearms to three people other than Buda on the grounds that such evidence was not admissible under Federal Rules of Evidence 404(b) and 403. We review the district court's decision to admit evidence pursuant to Rules 404(b) and 403 for abuse of discretion. *United States* v. *Plancarte-Alvarez*, 366 F.3d 1058, 1062 (9th Cir. 2004); *United States* v. *Gonzalez-Torres*, 309 F.3d 594, 601 (9th Cir. 2001)).**²** We find that the district court did not abuse its discretion and, thus, affirm the district court's denial of Ogles's motion for a new trial on this ground.

**[5]** Evidence of prior bad acts is admissible under Rule 404(b) if (1) the evidence tends to prove a material element of the offense charged, (2) the prior act is not too remote in time, (3) the evidence is sufficient to support a finding that the defendant committed the other act, and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged. *Plancarte-Alvarez*, 366 F.3d at 1062 (citing *United States* v. *Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994)).

**[6]** Braxton's and Kramer's testimony showed that Ogles directly transferred firearms to buyers at the Arizona gun

---

**²**Relying on Federal Rules of Evidence 103(a) and (d), the government argues that the district court's order denying Ogles's motion *in limine* to exclude the Rule 404(b) evidence was not "a definitive ruling" and that, accordingly, Ogles's failure to renew his objection when the evidence was introduced at trial requires plain error review. The Advisory Committee's Notes to Rule 103 clearly contemplate that rulings on motions *in limine* can be definitive for purposes of Rule 103 even though they may later be revisited. Fed. R. Evid. 103 advisory committee's notes ("Even where the court's ruling *is definitive*, nothing in the amendment prohibits the court from revisiting its decision [on a motion *in limine*] when the evidence is to be offered.") (emphasis added). As nothing in the record suggests that the district court's ruling on the motion *in limine* was not definitive, plain error review is not proper here. *See id.*

show without having them fill out appropriate paperwork and without using a licensed Arizona firearms dealer as a middleman. This evidence tends to diminish the likelihood that Ogles's sale to Buda was a mistake or through inadvertence given the repetition of similar acts within a short period of time and, thus, tends to prove a material element of the offense charged — specifically the willfulness element set forth in 18 U.S.C. § 924(a)(1)(D). *See Plancarte-Alvarez*, 366 F.3d at 1062. Furthermore, the evidence was not too remote in time from Ogles's sale to Buda, as the acts about which Braxton and Kramer testified occurred immediately before and after Ogles sold and directly transferred a firearm to Buda. *Id.*

**[7]** While Ogles argues that Braxton's testimony does not conclusively establish that Ogles actually sold any guns and that Kramer's testimony does not conclusively establish that Ogles knew he was selling to someone other than a licensed dealer, conclusiveness is not the relevant standard. Rather, the district court need only have concluded that "there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." *Id.* (citing *Huddleston v. United States*, 485 U.S. 681, 685 (1988)). We cannot say that the district court erred in deciding that Kramer's and Braxton's testimony was sufficient to support a finding that Ogles committed similar acts. Finally, the prior acts testified to by Kramer and Braxton were quite similar to Ogles's sale to Buda, involving cash transactions without receipts, the direct transfer of a firearm to an individual other than a licensed dealer, and no completion of paperwork documenting the transaction. Thus, we conclude that the district court did not abuse its discretion in concluding that Braxton's and Kramer's testimony regarding Ogles's sales of firearms to individuals other than Buda was admissible pursuant to Rule 404(b).

Nor did the district court abuse its discretion when it determined that Braxton's and Kramer's testimony should not be

excluded pursuant to Rule 403. The evidence was probative and not particularly inflammatory. Consequently, we affirm the district court's denial of Ogles's motion for new trial on these grounds.

## 4.

During the government's case-in-chief, the government had admitted into evidence and put before the jury ninety-six fire-arms and two lots of ammunition seized from Ogles. Ogles argues that he is entitled to a new trial because the district court erroneously admitted into evidence these items and permitted the government to show them to the jury during the course of the trial, maintaining that the display was unfairly prejudicial. We review the district court's evidentiary rulings for abuse of discretion. *Plancarte-Alvarez*, 366 F.3d at 1062.[3]

The district court did not abuse its discretion when it allowed the government to show the jury the seized weapons and ammunition, even after the district court acquitted Ogles as to Count Two. These exhibits were relevant as to Count One because the presence of price tags on the firearms tended to prove that Ogles came to the gun show with the intent to sell firearms and, thus, that Ogles physically transferred the firearm to Buda after the sale. Nor were the exhibits unfairly prejudicial to Ogles. It may be true that "many people view weapons, especially guns, with fear and distrust." *United States* v. *Hitt*, 981 F.2d 422, 424 (9th Cir. 1992). But Ogles, as were other merchants at the gun show, was a firearms

---

[3]The government contends that Ogles did not preserve this issue for appeal because he "first raised these concerns about the jury's exposure to the firearms in his new trial motion," and that we should review for plain error only. But Ogles objected to the admission of the firearms and ammunition when they were first introduced. Further, although it is not clear whether Ogles renewed his objection to the firearms and ammunition when the district court dismissed Count Two, the parties and the district court nevertheless were considering the question of the evidence's continued relevance.

dealer, and the jury was well aware of that fact. Any prejudice he may have suffered as a result of the display of firearms and ammunition he likely suffered simply by virtue of his profession. *Cf. United States* v. *Cruz-Garcia*, 344 F.3d 951, 956-57 (9th Cir. 2003).

**[8]** Having rejected each of Ogles's arguments, we affirm his conviction under Count One.

### B.

### 1.

The government separately appeals the district court's judgment of acquittal as to Count Two, which charged Ogles with willfully engaging in the business of dealing firearms without a license in violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D). Ogles argues that we do not have jurisdiction over the government's appeal because appeal of the district court's judgment of acquittal is barred by the double jeopardy clause. We hold that the double jeopardy clause is not implicated here as the district court's judgment of acquittal involved a legal determination only and, thus, was unrelated to Ogles's factual guilt or innocence.

Count Two charged Ogles with having violated 18 U.S.C. § 922(a)(1)(A), which states in relevant part: "It shall be unlawful . . . for any person . . . except a . . . *licensed dealer*[ ] to engage in the business of . . . dealing in firearms . . . ." 18 U.S.C. § 922(a)(1)(A) (emphasis added). In ruling on Ogles's motion for judgment of acquittal as to Count Two, the district court interpreted the phrase "licensed dealer" to mean a dealer licensed in any state and not necessarily in the state in which the dealer does business, and then continued:

> The Court finds that the defendant is a licensed dealer under the statute, and therefore — and the issue still remains as to Count 1 as to whether or not

he engaged in this improper transaction. But in any event, he was a licensed dealer under the statute at the time the transaction took place. Therefore, the judgment of acquittal is appropriate as to Count 2 of the indictment.

**[9]** If we have jurisdiction to hear the government's appeal of the district court's judgment of acquittal, it is pursuant to 18 U.S.C. § 3731:

> In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, or any part thereof, *except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.*

18 U.S.C. § 3731 (emphasis added). In *United States* v. *Scott*, 437 U.S. 82 (1978), the Supreme Court held that "where the defendant himself seeks to have the trial terminated without any submission to either judge or jury as to his guilt or innocence, an appeal by the government from his successful effort to do so is not barred by [the double jeopardy exception in] 18 U.S.C. § 3731 (1976 ed.)." *Id.* at 101.

**[10]** Thus, the question here is whether Ogles's acquittal on Count Two constitutes a "submission to either judge or jury as to his guilt or innocence." *Id*. The mere fact that it was styled an acquittal or that the district court purported to have made a "find[ing]" is irrelevant:

> [A] defendant is acquitted only when "the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense

charged[.]" Where the court, before the jury returns a verdict, enters a judgment of acquittal pursuant to Fed. Rule Crim. Proc. 29, appeal will be barred only when "it is plain that the District Court . . . evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction."

*Id*. at 97 (quoting *United States* v. *Martin Linen Supply Co.*, 430 U.S. 564, 571-72 (1977)); *accord Smith* v. *Massachusetts*, 125 S. Ct. 1129, 1134 (2005) (defining an "acquittal" for double-jeopardy purposes as a judgment that " 'actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged' ") (quoting *Martin Linen Supply Co.*, 430 U.S. at 571).

**[11]** Here, Ogles concedes that it was uncontested that he was a licensed dealer in California rather than Arizona. Further, it is clear that the district court granted the judgment of acquittal on the basis of a legal construction of 18 U.S.C. § 922(a)(1)(A) as applied to this uncontested fact and not because the government had failed to proffer sufficient evidence as to this or any other element of the charged crime. Thus, there was no "resolution" or adjudication "of some or all of the *factual* elements of the offense charged," *Scott*, 437 U.S. at 97 (emphasis added), nor even an "evaluat[ion] [of] the Government's evidence." *Id*. Rather, the district court made only a legal determination unrelated to factual guilt or innocence in granting Ogles's judgment of acquittal. Thus, the government's appeal is not barred by double jeopardy and, therefore, we have jurisdiction to hear it and render a decision.

2.

**[12]** Having determined that we have jurisdiction to hear the government's appeal, we must now interpret 18 U.S.C. § 922(a)(1)(A). The district court held and Ogles argues on appeal that "licensed dealer" as used in 18 U.S.C.

§ 922(a)(1)(A) means that a dealer need only be licensed somewhere rather than in the state in which he or she conducted business. We "review the construction, interpretation, or the applicability of a statute *de novo.*" *United States* v. *Ventre*, 338 F.3d 1047, 1052 (9th Cir. 2003). For the reasons discussed below, we conclude that to the extent an otherwise federally licensed firearms dealer conducts business at locations not specified on his or her license and in a manner not otherwise authorized by federal law, he or she exceeds the scope of his or her license and acts as an unlicensed dealer in violation of 18 U.S.C. § 922(a)(1)(A).

**[13]** We begin with the statutory definition of "[t]he term 'licensed dealer' " as "any dealer who is licensed under the provisions of this chapter." 18 U.S.C. § 921(a)(11). These licensing provisions are set forth in 18 U.S.C. § 923 and include the following provisions:

- "Each [license] applicant shall pay a fee for obtaining such a license, a separate fee being required for each place in which the applicant is to do business . . . ." 18 U.S.C. § 923(a).

- "Any application submitted under subsection (a) or (b) of this section shall be approved if . . . the applicant has in a State . . . premises from which he conducts business subject to license under this chapter or from which he intends to conduct such business within a reasonable period of time . . . ." 18 U.S.C. § 923(d)(1)(E)(i).

- "Any application submitted under subsection (a) or (b) of this section shall be approved if . . . the applicant certifies that . . . (i) the business to be conducted under the license is not prohibited by State or local law in the place where the licensed premises is located; (ii)(I) within 30 days after the application is approved the business will

comply with the requirements of State and local law applicable to the conduct of the business; and (II) the business will not be conducted under the license until the requirements of State and local law applicable to the business have been met . . . ." 18 U.S.C. § 923(d)(1)(F)(i)-(ii).

- "A . . . licensed dealer may, under rules or regulations prescribed by the Attorney General, conduct business temporarily at a location other than the location specified on the license if such temporary location is the location for a gun show or event . . . and such location is in the State which is specified on the license." 18 U.S.C. § 923(j).

As these provisions make clear, a license provided to a dealer pursuant to 18 U.S.C. § 923 is location specific save for temporary sales locations, such as gun shows, which temporary locations must still be found within the state of the licensed premises.

Further, as the government correctly notes, Ogles's proposed definition of "licensed dealer" would render 18 U.S.C. § 923(j) surplusage. If a licensed dealer was not limited to conducting business to his or her licensed premises, then it would be unnecessary expressly to permit a licensed dealer to "*conduct business temporarily at a location other than the location specified on the license.*" 18 U.S.C. § 923(j) (emphasis added). That 18 U.S.C. § 923(j) permits licensed dealers to conduct business temporarily at a location other than that specified on the license *but only if that location is in the state specified on the license* further evinces that the statute does not contemplate that a dealer licensed in one state necessarily is licensed in others.[4]

---

[4]Although the government argues additionally that the ATF's interpretation of the relevant statutes and Congressional intent in enacting the relevant statutes comport with the government's textual analysis, it is

In light of this, we find no significance in the juxtaposition of, on the one hand, 18 U.S.C. § 922(a)(1)(A), which applies to "any person" other than, among others, "licensed dealer[s]," thus criminalizing conduct by non-licensed dealers, and, on the other hand, other paragraphs in the statute that criminalize conduct specifically by, among others, "licensed dealer[s]." In this regard, the statute simply creates a scheme in which licensed dealers are regulated while conducting business within their lawful geographic scope and, simultaneously, are treated as non-licensed dealers when they exceed that scope. This is no different than licensing schemes that regulate other licensed professions such as the law. Lawyers licensed to practice in one state must comply with the regulations established by the Bar in that state, but, despite being licensed in one state, may nevertheless be prosecuted for the unauthorized — that is, unlicensed — practice of law should they practice in another state.

Ogles makes four arguments in response, none of which we find persuasive. *First*, Ogles argues that the licensing provisions in 18 U.S.C. § 923 are not "clear and definite" and interpretation on the basis of these licensing provisions "permits 'criminal outlawry' to be derived by implication." Ogles's parsing of the statute is unpersuasive. For example, Ogles argues that 18 U.S.C. § 923(a), which requires that licensees pay a fee for their license and that "a separate fee [is] required for each place in which the applicant is to do business," "implicitly recogniz[es] that businesses may be conducted at more than one location." We agree — so long as the licensees pay a separate fee and procure a separate license for each location. More significantly, Ogles argues that his interpretation of "licensed dealer" would not render 18 U.S.C. § 923(j)

unnecessary to review these materials because the text of the statute renders the meaning of "licensed dealer" clear. *Ventre*, 338 F.3d at 1052 ("Under traditional principles of statutory interpretation, if a statute's plain meaning is clear, resort to legislative history is unnecessary.").

surplusage because 18 U.S.C. § 923(j) establishes a special record keeping requirement, bars licensed dealers from conducting business in or from motorized or towed vehicles, and eliminates the separate location fee required by 18 U.S.C. § 923(a). Although Ogles is correct that 18 U.S.C. § 923(j) includes these provisions, these provisions all follow and modify the first-stated and central provision of 18 U.S.C. § 923(j): that a licensed dealer may, under certain circumstances, "conduct business temporarily at a location other than the location specified on the license." 18 U.S.C. § 923(j). Even if the others would not, this provision would be rendered surplusage if Ogles's interpretation were adopted, violating a " 'cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.' " *TRW Inc.* v. *Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan* v. *Walker*, 533 U.S. 167, 174 (2001)).

*Second*, Ogles argues that 18 U.S.C. § 922(a)(1)(A) is a penal statute and, thus, the rule of lenity requires that it be strictly construed. But courts "have always reserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to 'the language and structure, legislative history, and motivating policies' of the statute." *Moskal* v. *United States*, 498 U.S. 103, 108 (1990) (quoting *Bifulco* v. *United States*, 447 U.S. 381, 387 (1980); citing *United States* v. *Bass*, 404 U.S. 336, 347 (1971)). Here, for the reasons noted above, there is no "reasonable doubt" as to the statute's meaning.

*Third*, Ogles argues that *Douglas* and the corresponding ATF interpretations of 18 U.S.C. § 922(b)(3) require a finding that a license is not location specific because both permit out-of-state licensees to "display and possess guns, negotiate price, and receive money for firearms as long as the transfer of the firearm is through an [in-state] licensee," *Douglas*, 974 F.2d at 1049 (citing 27 C.F.R. §§ 178.29-.30, 178.100

(1991)), and, thus, implicitly recognize that licenses may be given effect for at least some purposes beyond the licensed premises. Both *Douglas* and the ATF interpretations pertain to 18 U.S.C. § 922(b)(3), and their limited expansion of the scope of a valid firearms license need not be imported to the remainder of 18 U.S.C. § 922; indeed, there is good reason not to do so. To begin, as noted above, importing *Douglas* and the corresponding ATF interpretations would render 18 U.S.C. § 923(j) surplusage. Further, although *Douglas* and the corresponding ATF interpretations indisputably permit some freedom to deal by out-of-state licensees, they nonetheless require out-of-state licensees to transfer the firearm through an in-state licensee "who fills out the appropriate forms." *Douglas*, 974 F.2d at 1049 (citing 27 C.F.R. §§ 178.29-.30, 178.100 (1991)). In so doing, they give effect to a significant if not the principle reason for making licenses location specific: that in "fill[ing] out the appropriate forms," *id.*, and thus keeping record of *who* bought *what* firearms, in-state licensees can make available to *local* law enforcement the information necessary to investigate misuse of firearms.

*Fourth*, Ogles relies on *United States* v. *Caldwell*, 49 F.3d 251 (6th Cir. 1995), wherein the Sixth Circuit rejected the government's contention that "a dealer's license is location specific" for purposes of 18 U.S.C. § 922(a)(1)(A). *Id.* at 252. There, the defendant was a licensed dealer of firearms but sold firearms away from the licensed premises, and pleaded guilty to dealing firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A). *Id.* The Sixth Circuit vacated the conviction, holding that "the statute contains no language stripping the dealer's licensed status for selling firearms away from the licensed premises." *Id.* at 252.

For the reasons already discussed, we disagree with *Caldwell*. Indeed, although the Sixth Circuit acknowledged the government's argument there that the court's reading of the statute would render 18 U.S.C. § 923(j) surplusage, the court did not address the argument, let alone rebut it. *Id.* Further,

although acknowledging that "a thorough reading of the statute indicates that [selling firearms away from the licensed premises] is improper," the Sixth Circuit nonetheless ignored these provisions because it did not "equate an improper transaction with an unlicensed transaction." *Id*. But, as noted above, "[t]he term 'licensed dealer' means any dealer who is licensed under the provisions of this chapter." 18 U.S.C. § 921(a)(11). Thus, an "improper transaction" cannot be disassociated from an "unlicensed transaction."

Finally, we note that we have found no case citing *Caldwell* for the proposition that a firearm dealer's license is not location specific for purposes of 18 U.S.C. § 922(a)(1)(A).[5] Rather, albeit in *dicta*, the Eleventh Circuit has evinced its disagreement with *Caldwell*'s interpretation. In *United States v. Bailey*, 123 F.3d 1381 (11th Cir. 1997), the Eleventh Circuit affirmed a federally licensed firearm dealer's conviction for operation of his firearm business without a license in violation of 18 U.S.C. § 922(a)(1)(A) when he conducted his firearm business at a location other than those on his licenses. *Id*. at 1392. On appeal, the defendant "dispute[d] neither that he was 'engage[d] in the business of importing . . . or dealing in firearms,' 18 U.S.C. § 922(a)(1)(A), nor that it was illegal for him to engage in that business at his home, where he was not licensed, *see* 18 U.S.C. § 923(a)," *id*., but the Eleventh Circuit nonetheless noted that "[f]ederal firearms licenses are valid only for the location specified on the license." *Id*. at 1388.

---

[5]We are aware that one of our colleagues has cited *Caldwell* with approval, but in a dissent and in a distinguishable context. *United States v. Ladum*, 141 F.3d 1328, 1350 (9th Cir. 1998) (Tashima, J., dissenting). There, the majority affirmed the district court's imposition of a two-level increase in the defendants' respective base offense levels due to the defendants' failure to report income exceeding $10,000 from criminal activity, holding that operating a firearms business, the license for which was fraudulently obtained, constitutes criminal activity. *Id*. at 1342-44. Judge Tashima dissented, arguing that a fraudulently obtained license is facially valid, even if voidable, and, thus, that the defendants' firearm sales under that license did not constitute criminal activity. *Id*. at 1350.

### III.

**[14]** Accordingly, Ogles's conviction as to Count One is affirmed, and the district court's judgment of acquittal as to Count Two is reversed and remanded for proceedings consistent with this opinion.

**AFFIRMED in part and REVERSED and REMANDED in part.**

---

RYMER, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's disposition of Ogles's appeal of his conviction under § 922(b)(3), and with its conclusion that we have jurisdiction to hear the government's appeal of the motion for acquittal as to Count 2. However, I disagree that the location-specific nature of federal gun licenses resolves the issue of whether § 922(a)(1) criminalizes Ogles's conduct.

Section 922(a)(1) does not say that it applies to licensed dealers who deal firearms outside their licensed premises. Nor does § 922(a)(1) say what the indictment charges — that Ogles "willfully engaged in the business of dealing in firearms without a license, *that is outside the State in which the licensee's place of business was located* . . . ." (Emphasis added.) What the statute actually says is: "It shall be unlawful for any person except a licensed . . . dealer, to engage in the business of . . . dealing in firearms . . . ."

Ogles *was* a "licensed dealer." Section 922(a)(1) does not state that a licensed dealer becomes an unlicensed dealer when he sells outside the state where his place of business is located. In charging that this is what "dealing in firearms without a license" means, the indictment imports a definition that is nowhere present on the face of the statute.

We are not concerned here with whether a dealer licensed for premises in California who deals firearms in Arizona is engaging in improper activity, or whether a licensed California dealer who wants to engage in the business of dealing firearms in Arizona must have a license for a place of business in Arizona. The question is whether Ogles's Arizona activities violated § 922(a)(1)(A). I do not disagree with the majority that the statutes, the Regulations, and the ATF guidelines all suggest that a firearms license is location-specific. For example, license applications and fees are issued and assessed for, and record-keeping requirements apply to, each place of business, *see*, *e.g.*, 18 U.S.C. §§ 923(a), (d)(1)(E), and (d)(1)(F), and a dealer who violates § 923 may have his license revoked, *see* 18 U.S.C. § 923(e), or be subject to criminal prosecution for willful violations, *see* 18 U.S.C. § 924(a)(1)(D). But these provisions do not change the plain meaning of § 922(a)(1)(A). Nothing in § 922(a)(1)(A), read alone or in conjunction with §§ 921 and 923, states that a licensed dealer who engages in off-premises, out-of-state business is not a "licensed dealer."

The structure of § 922 indicates that subsection (a)(1)(A) does not criminalize the conduct of a licensed dealer. Subsection (a)(1) makes it a crime for "*any person*" to engage in the business of dealing in firearms — *except* a licensed dealer.[1] By contrast, the language of subsection (b) makes it "unlawful for *any licensed . . . dealer*" to sell or deliver firearms under the conditions specified.[2] Thus, § 922(a)(1)(A) clearly applies to all people but licensed dealers; by the same token, its words do not apply to licensed dealers who improperly engage in the business of dealing firearms. Other sections, in particular § 922(b), plainly do apply to, and criminalize, such conduct by licensed dealers. Indeed, § 922(b)(3) specifically makes it unlawful for a licensed dealer to sell firearms to a person who does not reside in the state of the dealer's place of business.

---

[1]Subsections (a)(3), (a)(4), (a)(5), (a)(6), (a)(7) and (a)(9) apply to "any person" as well.

[2]Subsection (a)(2) also applies to "*any . . . dealer.*"

Given this, I would not construe § 922(a)(1)(A) as applying to a licensed dealer who makes off-premises sales to out-of-state residents.

To hold otherwise has the odd effect of making the same dealer at once licensed and unlicensed with respect to the same conduct. This is manifest by the indictment in this case. Based solely on what Ogles did at the Arizona gun show, the government chose to charge him with violating both § 922(b)(3), which makes it unlawful for *licensed dealers* to sell firearms to any person who the dealer knows does not reside in the state where the dealer's place of business is located, and § 922(a)(1)(A), which makes it unlawful for any person *except a licensed dealer* to deal firearms. As there is no dispute that Ogles was licensed for purposes of § 922(b)(3), I believe he cannot be unlicensed for purposes of § 922(a)(1)(A).

The Sixth Circuit so held in *United States v. Caldwell,* 49 F.3d 251 (6th Cir. 1995). There is merit to avoiding a circuit conflict with respect to a federal licensing scheme. *Caldwell* has been on the books for some time now, without Congressional action to amend the statute. This, too, influences me.

For these reasons, I would affirm across the board.