**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

            v.

JOHN GILBERT OGLES,
            *Defendant-Appellee.*

No. 03-10439

D.C. No.
CR-02-01805-CKJ

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

JOHN GILBERT OGLES,
            *Defendant-Appellant.*

No. 04-10069

D.C. No.
CR-02-01805-CKJ

OPINION

Appeals from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted
October 4, 2004—San Francisco, California
Panel Opinion Filed April 28, 2005

Rehearing En Banc Granted November 16, 2005

Argued and Submitted En Banc
December 14, 2005—Portland, Oregon

Filed March 10, 2006

Before: Mary M. Schroeder, Chief Judge, Harry Pregerson,
Stephen Reinhardt, Andrew J. Kleinfeld,
Michael Daly Hawkins, Susan P. Graber,
M. Margaret McKeown, William A. Fletcher,
Raymond C. Fisher, Ronald M. Gould, Marsha S. Berzon,
Circuit Judges.

Opinion by Judge McKeown;
Partial Concurrence and Partial Dissent by Judge Reinhardt;
Concurrence by Judge Berzon

**COUNSEL**

Michael A. Rotker, Department of Justice, Washington, D.C., for the plaintiff-appellant/appellee.

Richard E. Gardiner, Fairfax, Virginia, for the defendant-appellee/appellant.

**OPINION**

McKEOWN, Circuit Judge:

We consider whether the district court's judgment of acquittal under Federal Rule of Criminal Procedure 29(a) was related to factual guilt or innocence and thus constitutes a

"genuine acquittal," the government's appeal of which is barred by the Double Jeopardy Clause. John Gilbert Ogles was charged under 18 U.S.C. §§ 922(b)(3) and 924(a)(1)(D) with willfully selling and transferring physical possession of a firearm to a non-resident of the state in which he was licensed to deal firearms (Count One) and willfully engaging in the business of dealing firearms without a license in violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D) (Count Two). At the conclusion of the government's case, the district court granted Ogles' Rule 29(a) motion for a judgment of acquittal as to Count Two, concluding that Ogles was a "licensed dealer under the statute" and thus not in violation of selling firearms without a license. The jury convicted Ogles on Count One. Ogles appeals his conviction as to Count One; the government appeals the judgment of acquittal as to Count Two.

Although we took the entire case en banc, the primary issue that concerns us is our jurisdiction to address the government's appeal. We adopt section II(A) of the panel opinion, which affirms Ogles' conviction on Count One. *United States v. Ogles*, 406 F.3d 586 (9th Cir.), *reh'g en banc granted*, 430 F.3d 1221 (9th Cir. 2005). As to Count Two, we hold that the judgment of acquittal represented a ruling that the evidence was " 'legally insufficient to sustain a conviction.' " *Smith v. Massachusetts*, 125 S.Ct. 1129, 1135 (2005) (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572 (1977)). Consequently, the government's appeal is barred by the Double Jeopardy Clause.

## BACKGROUND

Ogles, a California resident, held a federal firearms license that listed his place of business, "Belleau Wood Gunsmithing & Firearms," as located in California. In June 2002, at a gun show in Arizona, Ogles sold a firearm to Michael Buda, an Arizona resident.

Ogles was indicted on two counts. Count One of the indictment charged Ogles with "willfully . . . sell[ing] and deliver-[ing] to Michael Buda a firearm . . . knowing and having reasonable cause to believe that Michael Buda at the time of the sale and delivery did not reside in the State in which the licensee's place of business was located," in violation of §§ 922(b)(3) and 924(a)(1)(D). Section 922(b)(3) provides that "[i]t shall be unlawful for any . . . licensed dealer . . . to sell or deliver . . . any firearm to any person who the licensee knows or has reasonable cause to believe does not reside in . . . the State in which the licensee's place of business is located."

Count Two of the indictment charged Ogles with "willfully engag[ing] in the business of dealing firearms without a license, *that is outside the State in which the licensee's place of business was located*," in violation of §§ 922(a)(1)(A) and 924(a)(1)(D) (emphasis added). Curiously, the indictment included a locality requirement, which the text of the statute does not. Section 922(a)(1)(A) provides only that "[i]t shall be unlawful—for any person—*except a . . . licensed dealer*[ ] to engage in the business of . . . dealing in firearms." (Emphasis added). Section 924(a)(1)(D) provides that whoever "willfully violates" these provisions shall be fined, imprisoned up to five years, or both.

At trial, the government introduced evidence regarding Ogles' conduct at the gun show, including testimony from Buda that he did not fill out any paperwork for his purchase and that Ogles handed over the firearm at the gun show after seeing Buda's Arizona driver's license. Two witnesses, both licensed to sell firearms in Arizona, testified that they informed Ogles that he could not physically transfer firearms to purchasers at the Arizona gun show.

At the close of the government's case, Ogles moved for a judgment of acquittal pursuant to Rule 29(a). With respect to Count Two, Ogles argued that § 922(a)(1)(A) applies only to

an unlicensed dealer and that he was a licensed dealer. The government opposed the motion, taking the position that a federal firearms license is location specific and that a licensee like Ogles who sells firearms outside of his designated area acts in an unlicensed capacity within the meaning of § 922(a)(1)(A). The district court adopted the reasoning of *United States v. Caldwell*, 49 F.3d 251, 252 (6th Cir. 1995), which held that § 922(a)(1)(A)'s prohibition against dealing in firearms without a license is not violated when the defendant has a federal firearms license, even if he sold firearms away from the licensed premises. The district court granted the motion on Count Two and reserved decision on Count One, stating:

> The Court finds that the defendant is a licensed dealer under the statute, and therefore — and the issue still remains as to Count 1 as to whether or not he engaged in his improper transaction. But in any event, he was a licensed dealer under the statute at the time the transaction took place. Therefore, the judgment of acquittal is appropriate as to Count 2 of the indictment.

The jury convicted Ogles on Count One, after which the district court denied the Rule 29(a) motion as to that count as well as Ogles' motion for a new trial. Ogles was sentenced to twenty-four months of supervised probation, three months of home confinement, and a $100 special assessment.

## ANALYSIS

### I.   CONVICTION ON COUNT ONE

Our primary concern is the government's appeal of the judgment of acquittal as to Count Two. We diverge, however, from our main inquiry to address certain representations made by the government for the first time during oral argument before the en banc panel. Solely on the basis of those state-

ments the dissent concludes that Ogles' conviction on Count One "is plainly and simply a 'wrongful conviction.' " Dissent at p. 2504 (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). We disagree.

During oral argument, the government suggested for the first time that a defendant cannot be convicted under both § 922(b)(3) and § 922(a)(1)(A)—i.e., as a licensed and unlicensed dealer—with regard to the same conduct. The government stated that when the case was charged and indicted, it believed Ogles was appropriately charged with both counts. Although the government claimed that it re-evaluated its position in light of the three-judge panel opinion, it continued to press its original position as late as the filing of its response to the petition for rehearing en banc.

The government's current position is unclear. On the one hand, the government advised that Ogles' conduct is best understood as "unlicensed" and thus falls under § 922(a)(1)(A) (Count Two), on which he was acquitted, rather than under § 922(b)(3) (Count One), on which he was convicted. At the same time, the government represented that it would concede the invalidity of the § 922(b)(3) conviction *only if* we conclude that double jeopardy does not bar the government's appeal, and *if* we agree with the government's legal theory as to the merits of § 922(a)(1)(A) and remand the acquitted Count Two for a new trial. Although the dissent interprets these representations as a "concession"—which we must accept—that the § 922(b)(3) conviction is invalid, Dissent at p. 2507, to take that position is to fall into one of two traps.

One trap is to read a non-concession as a concession. When a party says that it *would* concede a point *but only if* we already agreed with that party's position, the party has made no concession at all. This logic may be more distasteful when applied to government counsel, but the logic still remains.

[1] The other trap is, in effect, to allow ourselves to be "bound by the government's statement of the law." Dissent at

p. 2505. We are not bound by a party's concession as to the meaning of the law, even if that party is the government and even in the context of a criminal case. *See United States v. Miller*, 822 F.2d 828, 832 (9th Cir. 1987) ("Even if a concession is made by the government, we are not bound by the government's erroneous view of the law." (internal quotation marks omitted)).

The district court properly understood the statute. *See Caldwell*, 49 F.3d at 252 (holding that a gun dealer's license under 18 U.S.C. § 922(a)(1)(A) is not location-specific). In this respect, we agree with Judge Rymer's dissent in the three-judge panel opinion concerning the meaning of 18 U.S.C. § 922. *Ogles*, 406 F.3d at 598-600 (Rymer, J., dissenting). If the government believes that additional conduct should be penalized, then its remedy lies with Congress, not with the courts.

**[2]** For these reasons, we decline to entertain the government's newly minted argument and the convoluted conditions attached to it, which were raised for the first time during en banc proceedings. We also note that Ogles did not appeal his conviction on Count One on the basis of a statutory mismatch. We adopt section II(A) of the panel opinion, *Ogles*, 406 F.3d at 589-93, and affirm Ogles' conviction on Count One.

## II.   ACQUITTAL ON COUNT TWO

**[3]** The question we address as to Count Two is whether the government may appeal the district court's judgment of acquittal under Rule 29(a).[1] The answer to this question lies at the intersection of the federal statute governing appeals by the United States, 18 U.S.C. § 3731, and the Double Jeopardy

---

[1]Rule 29(a) provides in pertinent part that, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."

Clause. Section 3731 provides that the United States may appeal a "judgment . . . of a district court dismissing an indictment . . . except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution." The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V.

**[4]** In interpreting the clause, the Supreme Court explained that "[p]erhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that '[a] verdict of acquittal . . . could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy.'" *Martin Linen*, 430 U.S. at 571 (quoting *United States v. Ball*, 163 U.S. 662, 671 (1896)). Thus, the category of directed acquittals not covered by the Double Jeopardy Clause is quite limited:

> Our cases have made a single exception to the principle that acquittal by judge precludes reexamination of guilt no less than acquittal by jury: When a jury returns a verdict of guilty and a trial judge (or an appellate court) sets aside that verdict and enters a judgment of acquittal, the Double Jeopardy Clause does not preclude a prosecution appeal to reinstate the jury verdict of guilty.

*Smith*, 125 S. Ct. at 1134; *see also id.* at 1133 ("[W]e have long held that the Double Jeopardy Clause of the Fifth Amendment prohibits reexamination of a court-decreed acquittal to the same extent it prohibits reexamination of an acquittal by jury verdict. This is so whether the judge's ruling of acquittal comes in a bench trial or, as here, in a trial by jury." (citations omitted)).

The district court's judgment of acquittal which was entered at the close of the prosecution's case falls squarely within the Supreme Court's directive that a court-directed

acquittal "could not be reviewed, on error or otherwise," without violating the Double Jeopardy Clause. Despite the clarity of the Court's language, the government argues that the acquittal here is not a "genuine acquittal" because it was based on the district court's construction of § 922(a)(1)(A), a legal conclusion unrelated to Ogles' factual guilt or innocence. Additionally, the government suggests the district court's failure to recite the applicable legal standard for an acquittal is further evidence that it is not a true acquittal.

[5] To understand why the government's arguments cannot be squared with the Supreme Court's teachings, it is useful to survey a handful of key cases, beginning with *Martin Linen* in 1977, that establish the contours of the government's right to appeal a court-directed judgment of acquittal. These cases underscore that the decisive question has been, and continues to be, whether the district court found the evidence legally insufficient to sustain a conviction.

In *Martin Linen*, after a "hopelessly deadlocked" jury was discharged, the district court entered judgments of acquittal under Rule 29(c).[2] The Court noted that, even if the "acquittal was based upon an *egregiously erroneous* foundation, . . . [n]evertheless, '[t]he verdict of acquittal was final, and could not be reviewed . . . without putting [the defendants] twice in jeopardy, and thereby violating the Constitution.' " *Martin Linen*, 430 U.S. at 571 (emphasis added) (quoting *Fong Foo v. United States*, 369 U.S. 141, 143 (1962) (per curiam)). In addition, the Court explained that "what constitutes an 'acquittal' is not to be controlled by the form of the judge's action. Rather, [it] must [be] determine[d] whether the ruling

---

[2]Although *Martin Linen* involved judgments of acquittal under Rule 29(c) and not under Rule 29(a), the discussion of the Double Jeopardy Clause and Rule 29 generally serves as a helpful backdrop to our case. Rule 29(c) provides in pertinent part that a motion for judgment of acquittal may be made within 7 days after the jury is discharged, and "the court may enter a judgment of acquittal."

of the judge, whatever its label, actually represents a resolution, *correct or not*, of some or all of the factual elements of the offense charged." *Id.* (citations and footnote omitted) (emphasis added). The judgments of acquittal under Rule 29(c) were, according to the Court, " 'acquittals' in substance as well as form . . . [because] the District Court . . . evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction." *Id.* at 571-72.

The government in *Martin Linen* urged that entry of acquittal after the jury was discharged was somehow distinct from an acquittal under Rule 29(a) or (b), which is entered before discharge of the jury. The Court rejected this temporal distinction:

> [I]f the judge orders entry of judgment of acquittal on his own or on defendant's motion prior to submission of the case to the jury, as he may under Rule 29(a), or after submission but prior to the jury's return of a verdict, as authorized by Rule 29(b)—and the jury thereafter is discharged—the Government's argument necessarily concedes that the Double Jeopardy Clause would preclude both appeal and retrial.

*Id.* at 574. Indeed, far from "weakening the trial court's binding authority for purposes of double jeopardy," the timing distinctions in Rule 29 were designed to "accord[ ] the federal trial judge greater flexibility in timing his judgment of acquittal." *Id.* at 573. Emphasizing the sanctity and finality of acquittals under Rule 29, the Court concluded "that judgments under Rule 29 are to be treated uniformly and, accordingly, the Double Jeopardy Clause bars appeal from an acquittal entered under Rule 29(c) after a jury mistrial no less than under Rule 29(a) or (b)." *Id.* at 575.

One year after *Martin Linen*, the Supreme Court weighed in again on the double jeopardy issue in *United States v. Scott*, 437 U.S. 82 (1978), a case that figures prominently in the

government's brief. *Scott* concerned a defendant who successfully obtained dismissal of the indictment "based upon a claim of preindictment delay and not on the court's conclusion that the Government had not produced sufficient evidence to establish the guilt of the defendant." *Id.* at 95. Scott moved for dismissal before trial and twice during trial on the ground that his defense had been prejudiced by the delay. The Court determined that the government's appeal was not barred because the defendant "deliberately cho[se] to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense." *Id.* at 98-99.

In making the government's right to appeal contingent on the "character" of the midtrial termination, *Scott* overruled *United States v. Jenkins*, 420 U.S. 358 (1975). *Jenkins* had established that "regardless of the character of the midtrial termination"—i.e., whether it was an "acquittal" or a dismissal on other grounds— a government appeal would be barred if reversal would require " 'further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged.' " *Scott*, 437 U.S. at 94 (quoting *Jenkins*, 420 U.S. at 370). Overruling *Jenkins*, the Court explained that the double jeopardy concern of oppressive tactics by an "all-powerful state," which figured prominently in its broad holding in *Jenkins*, was a "far cry" from the situation in *Scott*, where " 'the defendant elected to seek termination of the trial on grounds *unrelated to guilt or innocence*.' " *Scott*, 437 U.S. at 96 (emphasis added).

**[6]** Throughout *Scott*, the Court contrasts the situation of a midtrial dismissal "on grounds unrelated to guilt or innocence," *id.*, with an "acquittal" resolving guilt or innocence:

> A judgment of acquittal, whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict, may not be appealed and terminates the prosecution when a second trial would be necessitated by a reversal.

*Id.* at 91. Leaving no doubt of its position, the Court emphasized that "the law attaches particular significance to an acquittal . . . however mistaken the acquittal may have been." *Id.*

[7] To clarify the distinction between acquittals and other midtrial dismissals, *Scott* invoked the definition of acquittal established in *Martin Linen*: " 'the ruling . . . actually represents a resolution . . . of some or all of the factual elements of the offense charged.' " *Scott*, 437 U.S. at 97 (quoting *Martin Linen*, 430 U.S. at 571). Thus, "[w]here the court, before the jury returns a verdict, enters a judgment of acquittal pursuant to Fed. Rule Crim. Proc. 29, appeal will be barred only when 'it is plain that the District Court . . . evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction.' " *Scott*, 437 U.S. at 97 (quoting *Martin Linen*, 430 U.S. at 572).[3] Although the government mistakenly cites this passage to support a more restrictive definition of "acquittal," the Court's subsequent decision in *Smalis v. Pennsylvania*, 476 U.S. 140 (1986), reinforces the limited application of *Scott*—i.e., to situations where a defendant seeks dismissal for reasons unrelated to factual guilt or innocence. Thus, *Scott* should be read as creating a narrow exception to the most fundamental rule in double jeopardy jurisprudence.

In *Smalis*, the defendants filed a demurrer pursuant to Pennsylvania Rule of Criminal Procedure 1124(a)(1), which,

---

[3]Interestingly, in *Sanabria v. United States*, a companion case decided the same day as *Scott*, the Court appears to place at least some weight on the form of the trial court's order: "While form is not to be exalted over substance in determining the double jeopardy consequences of a ruling terminating a prosecution, neither is it appropriate entirely to ignore the form of an order entered by the trial court." 437 U.S. 54, 66 (1978) (citations omitted). *Sanabria* also is significant because even though the trial court's dismissal of the indictment rested on an erroneous evidentiary ruling—a legal judgment—the Court held that "the Double Jeopardy Clause absolutely bars a second trial in such circumstances." *Id.* at 78.

like Rule 29(a), permits a defendant to "challenge the suffi-ciency of the evidence to sustain a conviction . . . at the close of the [prosecution's] case-in-chief." *Id.* at 141 n.2. Relying "heavily" on the same language in *Scott* that the government invokes here, *id.* at 142, the Supreme Court of Pennsylvania held that double jeopardy did not bar the prosecution's appeal of the trial court's decision to sustain the demurrer:

> "In deciding whether to grant a demurrer, the court does not determine whether or not the defen-dant is guilty on such evidence, but determines whether the evidence, if credited by the jury, is legally sufficient to warrant the conclusion that the defendant is guilty beyond a reasonable doubt . . . . [T]he question before the trial judge in ruling on a demurrer remains *purely one of law*.

*Smalis*, 476 U.S. at 143 (emphasis added) (quoting *Common-wealth v. Zoller*, 490 A.2d 394, 401 (Pa. 1985)).

The Pennsylvania Supreme Court's conclusion, namely that the trial court was making a legal determination rather than a determination of guilt or innocence, has a familiar ring as it echoes the government's position here. But the Supreme Court rejected that rationale and position because "[w]hat the demurring defendant seeks is a ruling that as a matter of law the State's evidence is insufficient to establish his factual guilt." *Id.* at 144. Noting that its past decisions firmly estab-lished that such a ruling is an acquittal for double jeopardy purposes, the Court clarified that "*Scott* does not overturn these precedents; indeed, it plainly indicates that the category of acquittals includes 'judgment[s] . . . by the court that the evidence is insufficient to convict.' " *Id.* (alteration in origi-nal) (quoting *Scott*, 437 U.S. at 91).

Just last term, in *Smith v. Massachusetts*, the Supreme Court revisited the question of what constitutes an acquittal for double jeopardy purposes. The defendant successfully

moved for an order entering "a finding of not guilty" at the conclusion of the prosecution's case under Massachusetts Rule of Criminal Procedure 25(a), which is analogous to a Rule 29 motion. *Smith*, 125 S.Ct. at 1135 (noting that "Massachusetts patterned its Rule 25 on Federal Rule 29"). Although the Commonwealth characterized the grant of such a motion as "a purely legal determination," *id.* at 1134, the Court once again rejected this argument, concluding that "what matters is that, as the Massachusetts rules authorize, the judge 'evaluated the [Commonwealth's] evidence and determined that it was legally insufficient to sustain a conviction,' " *id.* at 1135 (alteration in original) (quoting *Martin Linen*, 430 U.S. at 572).

Here, the government similarly contends that the district court's ruling is a purely legal determination unrelated to factual guilt or innocence and is not, therefore, a genuine acquittal. Specifically, the government argues that the district court's decision rested solely on its resolution of a statutory construction issue—that the term "licensed dealer" in § 922(a)(1)(A) is not location-specific.

**[8]** As the Supreme Court's unbroken line of decisions makes abundantly clear, the determinative question is whether the district court found the evidence legally insufficient to sustain a conviction. Without a doubt, the district court did so. In deciding the Rule 29(a) motion, the district court adopted the Sixth Circuit's interpretation of § 922(a)(1)(A) in *Caldwell* and concluded that the term "licensed dealer" does not have a geographic component. After adopting this interpretation, the district court determined that a *factual element* of the offense—namely, that Ogles was dealing firearms without a license at the time of the challenged conduct—had not been proven. Notably, the district court stated: "The Court finds . . . that the defendant was a licensed dealer under the statute at the time the transaction took place. Therefore, the judgment of acquittal is appropriate as to Count [Two] of the indictment." The judgment here was an acquittal in substance as

well as form—a determination that the evidence was insufficient to convict. Whether this determination was ultimately correct or "egregiously erroneous" is not relevant in evaluating double jeopardy. *Martin Linen*, 430 U.S. at 571.

The government suggests that because Ogles did not contest his licensed status, the district court's ruling did not meet the Supreme Court's definition of acquittal—that "whatever its label, [it] actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *Id.* The Court's double jeopardy decisions do not, however, condition an acquittal under Rule 29(a) on the district court's examination of contested facts. Here, the district court determined that a factual element of the offense had not been proved by the government. What is this if not a "resolution"?

**[9]** Nor do we credit the government's argument that the acquittal is somehow flawed by the absence of recitation of the legal standard. That the district court did not recite the text of Rule 29(a) or employ a specific phrase, such as "evidentiary insufficiency," is not determinative. As *Smith* makes clear, "what matters is that, as [Rule 29] authorize[s], the judge evaluated the [government's] evidence and determined that is was legally insufficient to sustain a conviction." 125 S.Ct. at 1135 (internal quotations omitted). We conclude the district court did exactly that and, therefore, the Double Jeopardy Clause bars the government's appeal.

**AFFIRMED** as to Count One. **APPEAL DISMISSED** as to Count Two.

---

REINHARDT, Circuit Judge, concurring in part and dissenting in part:

This is a most peculiar case, the outcome of which I find truly disturbing. Although I agree that the government's

appeal from the district court's acquittal of Ogles on Count Two must be dismissed on double jeopardy grounds, I strongly disagree with the decision to affirm Ogles's conviction on Count One. To understand why, it is necessary to review the history of the proceedings.

The government indicted Ogles, a gun dealer federally licensed in California, for selling a firearm to an Arizona resident at a gun show in Arizona. It indicted him on two counts, each based on a different provision of the same statute, but each relating to the same act; each count charged him with selling the same firearm at the same gun show. Remarkably, in one count, the government charged Ogles with being a *licensed* dealer and alleged that he violated the provision of the statute governing the conduct of *licensed* dealers, § 922(b)(3). In the other count, it charged him with being an *unlicensed* dealer and alleged that he violated the provision of the statute governing the conduct of *unlicensed* dealers, § 922(a)(1)(A). As should have been obvious, even to the government, Ogles could not have been guilty of both offenses.

At the conclusion of the government's case-in-chief, Ogles moved for a judgment of acquittal as to both counts. The district court granted the motion as to the § 922(a)(1)(A) count, the count applicable to *unlicensed* dealers, but reserved decision as to the other count. The jury ultimately convicted Ogles under § 922(b)(3), the count that covered *licensed* dealers. Both parties filed appeals: Ogles appealed his conviction for violating § 922(b)(3) and the government appealed his acquittal with respect to § 922(a)(1)(A). As to the latter, my colleagues have correctly concluded that the appeal of the district court's judgment of acquittal is barred by the Double Jeopardy Clause. I fully join in that part of Judge McKeown's opinion for the court. Given the extraordinary behavior of the government in this case, however, I disagree with the court's affirmance of Ogles's conviction on Count One, and therefore dissent as to that portion of the court's opinion.

Having sought convictions on two directly inconsistent charges in the district court, when it came time for oral argument before this en banc court, the government finally recognized the legal absurdity of its position and abandoned its effort to convict Ogles on both counts. Contrary to the majority opinion's characterization, the government's position is not "unclear." Majority at 2491. Belatedly, but without any evident embarrassment, the government stated unequivocally that it had reevaluated its position and acknowledged that Ogles could not "be convicted as both a licensed and unlicensed person with regard to the same transaction and at the same time."[1] Also, it recognized that it would have to decide whether Ogles was licensed or unlicensed when he sold the firearm. So far, so good. The government then told us that Ogles was "best understood as having acted in an unlicensed capacity" and that, regarding the applicable provisions of § 922, "[i]t's one, but not both, and we believe the proper one is (a)(1)(A) — it's not (b)(3)." Put plainly, the government acknowledged that Ogles should not have been convicted under § 922(b)(3) and that his conviction on that count was unlawful. Later in the oral argument, the government stated expressly that under its construction of the statute, "the (b)(3) conviction [wa]s invalid."[2] Still, all to the good. Then, however, losing sight of fundamental legal and ethical principles, the government attempted to condition its concession on our agreeing with its interpretation of the law and thereby sought to preserve the possibility of sustaining a conviction that it believed to be without legal foundation. The judicial shell game the government has played with the court in this case

[1]With regard to the inconsistent charges, the government admitted that "to the extent [we were] charging theories here that would require a conclusion of licensed and unlicensed, that cannot be correct."

[2]Although the majority opinion characterizes the government's admission as a "suggestion," Majority at 2491, in actuality, the government's conclusion that "it's one, but not both, and we believe the proper one is (a)(1)(A) — it's not (b)(3)," and that "the (b)(3) conviction was invalid," constituted an unequivocal admission that Ogles's conviction under § 922(b)(3) was erroneous and contrary to law.

is, in my view, wholly inappropriate and entirely unacceptable.

First, I believe that the government may not properly condition its concession that Ogles was convicted of a crime of which he was not guilty on the court's willingness to agree with its "legal theory on the merits of (a)(1)(A)." The government has an unequivocal duty to inform the court of its legal position as to the meaning of a criminal statute and as to whether a conviction it has obtained is lawful. It may not ask the court for concessions in return. A government lawyer, as an officer of the court, must be truthful and candid with the court at all times. Conditioning the government's representations as to the meaning of a criminal statute or as to the legality of a conviction upon a court's willingness to concur in its view, or on any other matter, is improper — in this case for at least two reasons. One, such conduct is inconsistent with the fundamental obligation of government lawyers to inform the court of its view of the law and of its conclusion as to whether a conviction is lawful or unlawful. Two, the government may not require a court to decide an issue that it need not decide — as part of an unprincipled Faustian bargain or otherwise. Here, this court need not consider the meaning of § 922(a)(1)(A), because the appeal on that count is barred by double jeopardy, and we need not consider the meaning of § 922(b)(3) because, following the government's concession, there is no reason to consider the appeal further at all. Certainly, we should not consider affirming a conviction that the government has told us is wrongful. Moreover, the question of the meaning of § 922(b)(3) was not raised before this court while the appeal was before the panel and thus it is not appropriate for resolution now.[3]

---

[3] The analysis of the statute that the majority opinion presents in a blatant attempt to justify its refusal to vacate the conviction, *see* Majority at 2492, is therefore wholly improper. We need not and should not reach the statutory interpretation issue in this case.

Second, the government is not free to seek an affirmance of a conviction that it believes to be contrary to law. The duty of the government to ensure that justice is done, and not that a conviction is secured regardless of what the government believes to be right, has been made eminently clear by the Supreme Court in *Berger v. United States*, 295 U.S. 78 (1935). In an often-quoted but still compelling (and apparently still necessary) lesson for government counsel, Justice Sutherland wrote:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. . . . It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Id.* at 88. The last quoted line should make it clear that in this case the government has an obligation to admit that it simply made a mistake. It believes that the defendant has been convicted of the wrong offense and under the wrong provision of the statute. Such a conviction is plainly and simply a "wrongful conviction." It is without question the government's duty, therefore, not to seek an affirmance of that conviction, but instead to ask us to vacate it, regardless of what the court says or does with respect to its appeal on the other count.[4]

---

[4]The majority opinion errs in characterizing the government's admission merely as a "distasteful" "non-concession." Majority at 2491. Although I agree that we may not entertain conditional concessions, what the government has done in this case is not just a matter of bad "taste." The government is not an ordinary litigator. Because its duty in a criminal case is to seek justice, it may not admit in open court that it believes a conviction to be unlawful and then continue to pursue the affirmance of that

The legal position that the government took before this en banc court — that Ogles did not commit the offense of which he was convicted — was not one that was simply "newly minted," Majority at 2492, by the attorney assigned to argue the en banc appeal. Counsel for the government advised us at oral argument that he had conferred with his supervisors within the Appellate Section of the Criminal Division of the Department of Justice, who agreed with the view of the statute he presented at oral argument, as did the Bureau of Alcohol, Tobacco, Firearms and Explosives. It was, indeed, well and fully considered by the United States government. To disregard the government's representation as to the meaning of the statute because its position was "newly minted," is to repudiate Justice Sutherland's mandate and to do a disservice to the cause of justice. The government is obligated to present the law fairly and accurately regardless of *when* it discovers its meaning: as soon as it discovers an error, the government has a duty to inform the court. To do otherwise, and particularly to argue its erroneous "oldly minted" position, would clearly have been improper.

I am not suggesting here that we should construe the statute on this appeal — quite the opposite. Nor am I suggesting that when we do construe it we are in any way bound by the government's statement of the law, *compare* Majority at 2491-92, even though it comes to us with the full weight of the Justice Department behind it. When we decide a statutory interpretation question, we are obligated to construe the statute in the

conviction. As discussed *infra*, I am not suggesting that we must or should adopt the government's interpretation of the law. Instead, I suggest that we have a duty not to adopt any position with respect to the meaning of the statute but simply to order vacatur of the conviction. I believe that what we must do is to recognize that the government's well-established duty to "refrain from improper methods calculated to produce a wrongful conviction," *see id.*, prevents it from prosecuting this appeal any further and that it is our duty as judicial officers to proceed no further with that part of the appeal.

manner that appears to us to be correct, not in the manner the government urges. I will not state here how I believe this court should construe the provision in question because that issue is not before us. For purposes of evaluating whether Ogles's conviction should stand, we need only accept the government's representation that the conviction is invalid and vacate it. When the government tells us that the conviction it has obtained is for conduct that does not constitute an offense, we must honor that representation.[5]

The government will undoubtedly present other cases in the future under one or the other of the two sections with which Ogles was charged, and may indeed be doing so in other courts at this very moment. Surely, it cannot properly seek to obtain an affirmance of a conviction in this court on the theory that one section of the statute controls while simultaneously seeking convictions in others on the theory that the other wholly inconsistent section is applicable. Rather, the government must take the same position as to the meaning of the statute in all the cases it urges. For consistency, if for no other reason, the government was required to advise us that Ogles's conduct did not violate § 922(b)(3).

In short, the government was required to tell us, as it did, that Ogles was not guilty of the offense of which he was convicted. It was not, however, entitled to attempt to qualify that concession by making it dependent on our issuance of a decision accepting its view of the law. Nor, having made the representation, was it proper for it to ask us to affirm a conviction that it believed to be "wrongful."

---

[5]The Supreme Court has held, on several occasions, that when the Solicitor General concedes that a conviction is invalid, it is appropriate to vacate the conviction. *See, e.g.*, *Lawrence v. Chater*, 516 U.S. 163, 165-66 (1996); *Alvarado v. United States*, 497 U.S. 543, 544-45 (1990); *Mariscal v. United States*, 449 U.S. 405, 405-06 (1981). Of course, its role is different than ours and it ordinarily grants a writ of certiorari, vacates and returns the case to the lower courts for the requisite action.

In my opinion, this court may not properly affirm Ogles's conviction in light of the government's concession.[6] Once the government has conceded that Ogles's conduct is not encompassed within § 922(b)(3), it is our obligation to vacate the conviction on the relevant count. To affirm a "wrongful conviction" because the government failed to obtain a favorable verdict on the charge of which it believes the defendant was guilty is to reward it with an unconstitutional consolation prize for its incompetence. To do so is also to condone the government's unethical efforts to manipulate this court's exercise of its decisionmaking authority. That is hardly proper conduct on the part of a federal court. For that reason, I must regretfully dissent.

---

BERZON, Circuit Judge, with whom Circuit Judges PREGERSON and FISHER join, concurring in the majority opinion (except in Part I) and in the judgment:

I concur in the majority opinion except for Part I. While I sympathize with much of what Judge Reinhardt writes in dissent, I do not see how we could reverse the conviction on Count I without reaching our own conclusion regarding the reach of the statutory provision underlying that conviction; the government's position on that question is not controlling.

---

[6]Judge Berzon, while expressing sympathy with my position, writes that she does "not see how we could reverse the conviction on Count I without reaching [the merits]." She does not say whether that is because she does not believe that when the Solicitor General or the United States Attorney confesses error, we are not free to accept that confession and vacate a conviction, which would be erroneous as a matter of law, or, as I suspect is more likely, whether she believes that the United States is free to make "qualified" confessions of error conditioned upon a court's agreement with its tactical maneuver and thus to preserve the option of obtaining the affirmance of a conviction it believes to be illegal. The latter question is more difficult, but cannot be avoided if one wishes to express a serious view on the question before us.

Indeed, I am not at all sure that Judge Reinhardt is correct in supposing that the government could not pursue, in separate cases, contrary legal positions. When faced, as here, with a complicated statutory scheme and ambiguous provisions that have not been construed in binding precedent, the government may be able to test the application of the provisions by going forward on one of two arguable statutory theories in each case.

Here, the defendant has never challenged the applicability of the statute underlying the conviction on Count I, as the majority notes. While the opinion in *United States v. Caldwell*, 49 F.3d 251 (6th Cir. 1995), has much to recommend it, there are also competing considerations—among them the oddity that the construction adopted in *Caldwell* would leave a gap that precludes a criminal conviction for a licensed dealer who sells outside his home state but does so to a resident of his own state. *See* 18 U.S.C. § 922(b)(3) (providing that a licensed dealer commits an offense by selling to a person "who the licensee knows or has reasonable cause to believe does not reside in . . . the State in which the licensee's place of business is located"). In other words, on the majority's view of the statute, had Buda been a resident of California, Ogles could not have been convicted for selling a gun to him in Arizona.

Given the difficulty of the statutory interpretation issue here, I would not resolve it in an en banc opinion in which the only impetus for addressing it comes from the government's last minute switch of legal position. And, absent any resolution of the statutory question, I do not believe we can vacate the conviction on Count I. I therefore do not join in Part I of the majority opinion but join in the rest of the opinion and in the result.