**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellant,*

v.

DOMINIQUE CHARLES BLANTON,
        *Defendant-Appellee.*

No. 05-50302

D.C. No.
CR-04-00250-RMT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellant,*

v.

DOMINIQUE CHARLES BLANTON,
a/k/a DOMANIQUE CHARLES
BLANTON, DOMANIQUE CHARLES
GLANTON, DOMANIQUE BLANTON,
DOMINIUE RODZAY, DOMANQUE
BLANTON, DOMINIQUE LEE BLANTON,
"RODZAY", "LILRODSAY",
"RODZAG", "LIL RODZAY", "DUKE"
and "TINYZAY",
        *Defendant-Appellee.*

No. 05-50717

D.C. No.
CR-04-00250-RMT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellant,*

v.

DOMINIQUE CHARLES BLANTON,
        *Defendant-Appellee.*

No. 05-50752

D.C. No.
CR-04-00250-RMT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

        v.

DOMINIQUE CHARLES BLANTON,
            *Defendant-Appellee.*

No. 05-50887

D.C. No.
CR-04-00250-RMT

OPINION

Appeal from the United States District Court
for the Central District of California
Robert M. Takasugi, District Judge, Presiding

Submitted August 16, 2006*
Pasadena, California

Filed February 12, 2007

Before: Alex Kozinski, Diarmuid F. O'Scannlain, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge O'Scannlain

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

**COUNSEL**

Debra Wong Yang, United States Attorney, Central District of California, Assistant United States Attorneys Thomas P. O'Brien and Erik M. Silber were on the briefs for the plaintiff-appellant.

Dean R. Gits, Acting Federal Public Defender, Central District of California, and Deputy Public Defender Carlton F. Gunn were on the brief for the defendant-appellee.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must determine whether the Fifth Amendment's Double Jeopardy Clause prohibits the government from appealing a district court's allegedly erroneous denial of an Armed Career Criminal Act sentencing enhancement.

I

Dominique Blanton was arrested by the Los Angeles Police Department on April 19, 2003, and charged by the State of California with being a felon in possession of a firearm and ammunition in violation of Cal. Penal Code § 12021(a)(1). Blanton was convicted of that offense in Los Angeles County Superior Court on May 1, 2003.

Based on the same arrest, on March 5, 2004, a federal grand jury charged Blanton with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The federal indictment included a charge under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), that Blanton committed the offense after having sustained at least three prior violent felony convictions. Those convictions included an assault with a deadly weapon charge under Cal. Penal Code § 245(a)(1), as well as three qualifying juvenile delinquent adjudications—two convictions for robbery under Cal. Penal Code § 211, and one conviction for voluntary manslaughter, under Cal. Penal Code § 192(a). Blanton filed a motion to bifurcate the guilt and ACCA sentencing phases of the trial, which the district court granted. The jury found Blanton guilty as charged.

Blanton then waived his right to a jury trial as to the ACCA sentencing enhancement phase, where the government introduced various records of conviction and the defendant stipulated that he was the person identified in all of them. According to the government, the documents showed that the defendant: (1) had been convicted of two counts of robbery with an enhancement for the use of a firearm; (2) had pleaded no contest to a charge of voluntary manslaughter, with an enhancement because a firearm had been used by one of the principals in the offense; and (3) had pleaded guilty to assault with a deadly weapon.

Blanton filed a Federal Rule of Criminal Procedure 29 motion for a judgment of acquittal, asserting that because two of these predicate convictions were non-jury juvenile adjudications, they did not qualify as predicate offenses under *United States v. Tighe*, 266 F.3d 1187 (9th Cir. 2001). The district court, while holding that non-jury juvenile adjudications could qualify as predicate offenses under *Tighe*, went on to hold that under *Blakely v. Washington*, 542 U.S. 296 (2004), non-jury juvenile adjudications could not be predicate offenses for the purposes of ACCA sentencing enhancement

because the underlying conduct was never proven to a jury. The district court thereupon granted the Rule 29 motion. *United States v. Blanton*, 367 F. Supp. 2d 1288 (C.D. Cal. 2005).

The government timely appealed.

## II

Blanton asserts that the Double Jeopardy Clause of the Fifth Amendment bars this appeal, but on the merits argues that the district court reached the proper result. Blanton contends that because the district court acquitted him of the ACCA enhancement, remanding for further proceedings would expose him to jeopardy a second time. The government contends that because the district court did not resolve any factual questions in Blanton's favor, the Double Jeopardy Clause does not apply. Under 18 U.S.C. § 3731, the United States may appeal "whenever the Constitution would permit," *United States v. Wilson*, 420 U.S. 332, 337 (1975), "except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution." 18 U.S.C. § 3731. *See also* U.S. Const. amend. V (guaranteeing that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb").

Neither party disputes that because *Tighe* concluded that the Sixth Amendment applies to the determination of the fact of a prior non-jury juvenile conviction (i.e., that such a fact does not fall into the *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), exception), the Double Jeopardy Clause may be implicated. *See United States v. Velasco-Heredia*, 319 F.3d 1080, 1086-87 (9th Cir. 2003) (stating that the Double Jeopardy Clause bars the government from proving facts which increase a sentence beyond the statutory maximum not proven in the original prosecution); *see also Apprendi v. New Jersey*, 530 U.S. 466, 476, 495 (2000).

A

In *United States v. Ogles*, 440 F.3d 1095 (9th Cir. 2006) (en banc), Ogles, a California resident with a license to sell firearms in California, was arrested for selling a firearm at a gun show in Arizona and was indicted on a count of " 'willfully engag[ing] in the business of dealing firearms without a license.' " *Id.* at 1098 (quoting indictment). At the close of the government's case, Ogles filed a Rule 29 motion for a judgment of acquittal, contending "that § 922(a)(1)(A)[1] applies only to an unlicensed dealer and that he was a licensed dealer." *Id.* The government proffered a competing interpretation of the statute, but the district court adopted Ogles's interpretation. The government argued on appeal "that the acquittal . . . is not a 'genuine acquittal' because it was based on the district court's construction of § 922(a)(1)(A), a legal conclusion unrelated to Ogles' factual guilt or innocence." *Id.* at 1100.

**[1]** We rejected the government's view, explaining that "the determinative question is whether the district court found the evidence legally insufficient to sustain a conviction." *Id.* at 1103. We explained:

> In deciding the Rule 29(a) motion, the district court adopted [an alternative] interpretation of § 922(a)(1)(A) . . . and concluded that the term "licensed dealer" does not have a geographic component. After adopting this interpretation, the district court determined that a factual element of the offense—namely, that Ogles was dealing firearms without a license at the time of the challenged conduct—had not been proven.

[1]18 U.S.C. § 922(a)(1)(A) reads, "(a) It shall be unlawful—(1) for any person—(A) except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce."

*Id.* We went on to note: "The Court's double jeopardy decisions do not . . . condition an acquittal under Rule 29(a) on the district court's examination of contested facts. Here, the district court determined that a factual element of the offense had not been proved by the government. What is this if not a 'resolution'?" *Id.* at 1104.

**[2]** Here, the district court applied ACCA, *Tighe*, and relevant Sixth Amendment principles to analyze "predicate offenses" just as the district court in *Ogles* construed the term "licensed dealer." Here, as in *Ogles*, the district court concluded that the evidence was insufficient to convict. *Compare Blanton*, 367 F. Supp. 2d at 1292 ("Thus, the court finds that Defendant's juvenile adjudications may not serve as predicate offenses under 18 U.S.C. § 924(e)(1) because Defendant was not afforded the right to a jury trial in those proceedings. Accordingly, IT IS ORDERED that Defendant's Rule 29 motion is GRANTED."), *with Ogles*, 440 F.3d at 1103 ("After adopting this interpretation, the district court determined that a factual element of the offense . . . had not been proven." (emphasis omitted)). The district court appeared to take it as given that the convictions had been proven, but concluded that under its interpretation of the ACCA, *Tighe*, and *Blakely*, the evidence was legally insufficient to qualify as predicates for enhanced sentencing. This mirrors *Ogles*, where the district court concluded that, under its interpretation of "licensed dealer," the evidence was insufficient to convict.

**[3]** None of the "narrow" exceptions to double jeopardy described in *United States v. Scott*, 437 U.S. 82 (1978), applies. There the dismissal was on grounds "unrelated to factual guilt or innocence." *Ogles*, 440 F.3d at 1102. Instead, the decision was based on preindictment delay, which is compatible with a finding that the defendant was factually guilty. *Scott*, 437 U.S. at 82. Here, in contrast, the district court's conclusion—that there was insufficient evidence to support an ACCA enhancement—squarely addressed whether the gov-

ernment proved an element of the ACCA offense; thus, the district court's ruling is directly related to guilt or innocence.

**[4]** Further, the Supreme Court made clear in *Smalis v. Pennsylvania*, 476 U.S. 140 (1986), that it is irrelevant if the acquittal is based on a legal error:

> The status of the trial court's judgment as an acquittal is not affected by the Commonwealth's allegation that the court erred in deciding what degree of recklessness was . . . required to be shown under Pennsylvania's definition of [third-degree] murder. [T]he fact that the acquittal may result from erroneous evidentiary rulings or *erroneous interpretations of governing legal principles* . . . affects the accuracy of that determination but it does not alter its essential character.

*Id*. at 144 n.7 (alterations in original) (emphasis added) (internal quotation marks and citations omitted). We are satisfied that double jeopardy is implicated even if the district court's legal interpretation of the ACCA was faulty. As we held in *Ogles*, "the determinative question is whether the district court found the evidence legally insufficient to sustain a conviction." *Ogles*, 440 F.3d, at 1103. This is precisely the question that the district court determined here. Accordingly, jeopardy attached to that judgment, whether it was made in error or not.

## B

**[5]** The government contends, however, that Blanton cannot claim the protection of the Double Jeopardy Clause because he deliberately waited until jeopardy attached before raising it. Such argument misses two key points. First, Blanton's Rule 29 motion challenged the sufficiency of the evidence, not the indictment itself. Specifically, Blanton contended that "[t]he government has not carried its burden of

proving that the two alleged juvenile adjudications constitute violent felonies for purposes of ACCA." Because the motion turned on the evidence, even uncontested evidence, it could not be raised until the evidence was presented at trial. *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) (" '[A] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence.' " (quoting *United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975)); *see also United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) (per curiam) ("There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of the sufficiency of the evidence."). Thus, Blanton's Rule 29 motion was timely.

Second, the government's reliance on *Scott*, 437 U.S. 82, to show that Blanton delayed too long in challenging the ACCA enhancement is not persuasive. As we noted above, in *Scott* the defendant moved to dismiss the indictment on the grounds of preindictment delay. Here, in contrast, the ruling was directly related to factual guilt or innocence (or directly related to the essential elements of the ACCA enhancement provisions to Blanton's conduct), so *Scott*'s rationale does not apply.[2]

C

In *Tighe*, we held that the fact of non-jury juvenile convictions must be proved beyond a reasonable doubt. 266 F.3d at 1194. Further, we have also held that the Double Jeopardy Clause bars the government from later proving an *Apprendi* fact—i.e., a fact that enhances the sentence above the statutory maximum—not proven in the original prosecution.

---

[2]Further, the timing of the motion in this case mirrors that in *Ogles*. 440 F.3d at 1097 ("*At the conclusion of the government's case*, the district court granted Ogles' Rule 29(a) motion for a judgment of acquittal[.]" (emphasis added)).

*Velasco-Heredia*, 319 F.3d at 1086-87. The Government argues that under *Monge v. California*, 524 U.S. 721 (1998), the Double Jeopardy Clause does not apply to sentence enhancements. Although *Velasco-Heredia*'s contrary holding is controlling here, *Monge*, to the extent it remains good law after *Apprendi*, does not apply.

**[6]** Without question, *Monge* stands for the proposition that, outside of the death penalty context, double jeopardy considerations do not apply to sentencing proceedings. 524 U.S. at 728 ("Historically, we have found double jeopardy protections inapplicable to sentencing proceedings, because the determinations at issue do not place a defendant in jeopardy for an 'offense.' " (citation omitted)). But *Monge*'s analysis of double jeopardy in the sentencing context was undertaken before the Court's decision in *Apprendi*. Thus, in *Monge* the Court found it significant that the sentencing enhancement at issue was not part of the offense, noting that the Court had rejected "an absolute rule that an enhancement constitutes an element of the offense any time that it increases the maximum sentence to which a defendant is exposed." *Id*. at 729. But in *Apprendi* the Court embraced precisely that rule. 530 U.S. at 476, 488 n.14.

**[7]** Similarly, the Court in *Monge* refused to apply double jeopardy to sentencing proceedings even when they bore the hallmarks of a trial, in important part because the trial-like safeguards were a matter of "legislative grace, not constitutional command." 524 U.S. at 734. Again, after *Apprendi* and our own decisions in *Tighe* and *Velasco-Heredia*, the proceedings we review here were trial-like not by legislative grace or judicial caprice, but precisely because of the constitutional command of the Sixth Amendment.

**[8]** The Court cautioned in *Apprendi* that labels such as "sentencing enhancement" or "element" do not provide principled reasons for distinguishing what they name. For this reason, without assuming that *Monge* is no longer good law, but

following the more recent dictate of *Apprendi*, we find that the general inapplicability of the Double Jeopardy Clause to sentencing proceedings is not sufficient to answer the question presented in this case. Rather, we look behind the labels to the constitutional commands governing the treatment of sentencing enhancements that increase the statutory maximum to which the defendant would otherwise be exposed. To do otherwise would exalt form over substance and thereby undermine the constitutional guarantees of the Fifth and Sixth Amendments, and this we are both unwilling and forbidden to do.

### III

**[9]** In summary, we agree with Blanton that the district court resolved the issue of guilt or innocence in his favor, and that the Double Jeopardy Clause bars this appeal. *See Ogles*, 440 F.3d at 1103-04. It is immaterial whether the district court's interpretation of the relevant legal issue was correct. *Id*. at 1103; *see also Smalis*, 476 U.S. at 144 n.7; *Smith v. Massachusetts*, 543 U.S. 462, 469 (2005). Under 18 U.S.C. § 3731, therefore, the government is without authority to appeal. The appeal is therefore

**DISMISSED.**